DAVID A. CHURCHILL v. THE CHOCTAW RAILWAY COMPANY.

1. RIGHT OF WAY—*Grant in Praesenti.* An act of congress investing and empowering a railway company with the right of way of locating. constructing, owning, equipping, operating, using and maintaining a railway through and over public land and providing that said company is authorized to take and use for all purposes of a railroad a right of way over said public land is a present absolute grant.

2. HOMESTEAD SETTLER—*Subject to Right of Way.* A homestead settlement subsequent to such an act is subject to the rights of the railway company

although the line of the road was not definitely located until after the entry and the settler cannot recover for damages necesarily occasioned by the building of the railway under said act.

*Error from the District Court of Canadian County.*

Injunction. The facts are stated in the opinion.

*W. W. Noffsinger*, for plaintiff in error.

*J. W. McLoud*, for defendant in error.

The opinion of the court was delivered by

Scott, J.: On the 17th day of July, 1890, the plaintiff filed a petition before Hon. A. J. Seay, then judge of the Second judicial district of Oklahoma Territory, alleging that the defendant company, under and by virtue of an act of congress, approved February 18, 1888, and as amended February 13, 1889, was constructing a railroad across the southeast quarter of section eighteen, township twelve, north of range five, east of the Indian meridian, in Canadian county, Oklahoma Territory, which land the plaintiff had filed upon as a homestead on the 30th day of April, 1889, and was still occupying the same as a homestead. The petition further alleged that there was no statutory enactment, either Terriorial or federal, in force in Oklahoma Territory, by which the damages by said railroad could be ascertained or adjusted, and no law or procedure by which railroads could be made to pay for their right of way, and the plaintiff therefore prayed for an injunction restraining the defendant from constructing the railroad until just and full compensation could be made to the plaintiff for the right of way. The judge of the court, on the 21st day of July, 1890, granted an order of injunction until the further order of the court, or until the defendant company should deposit with the clerk of the court the sum

of $350. The order provided further that the plaintiff should, on or before the second regular term of court in said county after said date, bring his suit for damages against said railroad company, or the order of iujunction would become inoperative, and the defendant would be entitled to withdraw the deposit. On the 10th day of October, 1890, the defendant filed a motion to vacate the injunction for the following reasons:

1. That the petition did not state facts sufficient to authorize the issuing of the same.

2. The facts and allegations set forth in the petition upon which said injunction was granted, were untrue.

3. That since the granting of said injunction, the plaintiff had commenced proceedings to recover damages for the right of way in controversy in that case, under the provisions of ch. 16 of the Compiled Statutes of Nebraska in force in said state, November 1, 1889, entitled "Corporations."

4. That no bond or undertaking had been given in said case by the plaintiff.

On the 10th of November, 1892, the defendant company also demurred to the petition upon the ground that the petition did not state facts sufficient to constitute a cause of action against the defendant.

On the 13th day of December, 1892, in open court, before the Hon. John H. Burford, as judge of the court, after full argument, the said motion of the defendant to dissolve the injunction, was sustained, and the demurrer to the petition was sustained, and the plaintiff refusing to amend his complaint or further plead, judgment was rendered for the defendant, from which judgment the plaintiff has appealed to this court.

By act of congress, approved February 18, 1888, the Choctaw Coal and Railway company, defendant in error,

was granted a right of way through the Choctaw Indian nation.

Section 1 of said act provided, that the Choctaw Coal and Railway company be and the same is hereby invested and empowered with the right of locating, constructing, owning, equipping, operating, using and maintaining a railway and telegraph and telephone line through the Indian Territory.

Section 2 of said act provided " that said corporation is authorized to take and use for all purposes of a railroad, a right of way one hundred feet in width through said Indian Territory, and to take and use a strip of land two hundred feet in width, with a length of three thousand feet, in addition to right of way for stations, for every ten miles of road, with the right to use said additional ground, where there are heavy cuts or fills as may be necessary for the constructing and maintenance of the road-bed, not exceeding one hundred feet in width on each side of said right of way."

By act of February 13, 1889, the first section of the aforesaid act was amended so as to make the provisions of said act, including the grant of the right of way, extend from a point in the Choctaw nation to a point on the Southern Kansas railway between the two Canadian rivers, in the northwestern part of what was then known as the Indian Territory.

This act, in §§ 3 and 5, contained certain provisions for compensation to the Indians for the right of way to their lands so taken, both as a nation and as individual occupants.

By the act of congress of March 2, 1889, a large portion of said Indian Territory between the two Canadian rivers, hitherto occupied by the Seminoles, the Indian title having been extinguished, was made a part of the

30—1v.

public domain, subject to homestead entry by proclama-
tion of the president. This act, however, expressly
reserved rights of way and depot grounds, theretofore
granted to railway companies through said Territory.

In said Territory, thrown open to settlement by proc-
lamation of the president under this act, is situated the
land described in the petition of plaintiff in error, as
plaintiff below, on which he made homestead entry,
April 30, 1889.

Afterwards, on July 13, 1889, the defendant railway
company filed with the secretary of the interior a map
of its survey as required by the aforesaid act conferring
its charter powers, showing its route over the homestead
entry of plaintiff in error; which map or plat was
approved by the secretary of the interior in the follow-
ing language:

"Approved as to that portion of the line of road hereon
that passes over public land, and subject to the provision
of the act of congress approved February 18, 1888."

Plaintiff in error further claimed and alleged in his
petition below that the defendant company "was claim-
ing and has commenced to appropriate a right of way
over the tract in dispute, where the plaintiff has the fol-
lowing improvements, to-wit, a dwelling house, stable,
hen-house, an earth-covered cave, shade, fruit and orna-
mental trees, and about sixty acres in corn, over the pro-
test of plaintiff and without condemning or paying any
compensation therefor."

The only issue presented by the pleadings is, did the
acts of congress aforesaid vest in the defendant com-
pany, absolutely *in præsenti*, the right of way for rail-
way purposes through the Territory mentioned, or did
they merely authorize the said company to acquire a
vested title to such right of way, on the performance of

certain conditions in said acts mentioned, one of which was the filing of its map or plat with the secretary of the interior?

If the former be the correct view, then plaintiff in error's homestead entry, being subsequent to the said acts of congress, was subordinate to the rights conferred on said company thereby, and plaintiff in error could not legally deny to defendant company the right to locate its line over this land without compensation.

But, if the latter view of the law be correct, then plaintiff in error stated a cause of action in his petition and is entitled to have the judgment below reversed.

Counsel for both parties have filed exceedingly able briefs, showing great zeal and careful research on either side.

We are of the opinion that this question must be decided in favor of the view maintained by defendant in error—that the grant of a right of way to defendant in error by the act of February 18, 1888, as amended February 13, 1889, was a " present absolute grant" subject to certain conditions subsequent, in that part of the said Territory, remaining under Indian occupancy, and so far as they were applicable in that part thrown open to settlement.

This is the construction given to that act by the supreme court of Oklahoma in the celebrated case of *The United States ex. rel. Search et al. v. The Choctaw, Oklahoma & Gulf Railway Company*, 3 Okla. 404, 41 Pac. 729, which affirmed the judgment of Justice Scott, sitting in chambers, in said cause, in the Third judicial district, involving a temporary writ of injunction. Almost identically the same question was decided after a thorough and exhaustive investigation by the supreme

court of the United States in *St. Joseph & Denver Railway Company v. Baldwin*, 103 U. S. 426.

The following statement by the court shows that the contention of Baldwin in that case was precisely the same as the contention of Churchill in this:

"This was an action by the plaintiff under the laws of Nebraska to recover of the St. Joseph & Denver Railway company or its successor in interest damages for entering upon his land in that state and appropriating, in the construction of its road, a strip of land two hundred feet in width and two hundred rods in length. The company claimed a right of way over the land of that width, under the act of congress of July 23, 1866, etc. * * * When the grant of congress was made the land claimed by the plaintiff was vacant and unoccupied land of the United States; but the line of road over it was not definitely located until October, 1871, he (Baldwin) acquired whatever rights he possesses in October, 1869. The defendant contends that the plaintiff took the land subject to its right of way. He contends that the grant of the right of way took effect only from the date at which the company filed its maps designating the route with the secretary of the interior."

In the opinion based on these facts the court, speaking of the grant of the right of way, says:

"It is a present, absolute grant, subject to no conditions except those necessarily implied, such as that the road shall be constructed and used for the purpose designated, nor is there anything in the policy of the government with respect to the public lands which would call for any qualification of the terms * *. The right of way for the whole distance of the proposed route was a very important part of the aid given. If the company could be compelled to purchase its right of way over any section, that might be occupied in advance of its location, very serious obstacles would often be imposed to the progress of the road. For any loss of lands, by settlement or reservation, other lands are given, but

for the loss of the right of way by these means, no com-
pensation is provided nor could any be given by the sub-
stitution of another route."

Counsel for plaintiff in error in this case contends
with much plausibility of argument that the grant of
the right of way to the railway company being general
and the future location uncertain, and plaintiff in error
having in good faith settled upon and improved the
land in question before the defendant in error's line was
definitely located, it would be essentially unjust, for de-
fendant in error to be now permitted to take his land
and destroy his improvements without compensation;
that such would be contrary to the liberal policy and
purposes of the government in opening up the country
to settlement.

It must be remembered, however, that all persons are
affected with notice of existing laws, and the construc-
tions placed upon them by the supreme court; and that
prior to the time when plaintiff in error secured his
homestead entry and made his improvements on the land
in question, statutes similar to that we are now consider-
ing had been enacted and had received a construction
by the supreme court, exactly opposite to that contended
for herein by him.

Whatever view might be taken of the question by the
court, were it raised now for the first time, and were we
without a precedent for our guidance, it is not necessary
for us now to consider. The identical argument made
by counsel was made before the supreme court of the
United States in the Baldwin case. In that case it is
further said:

"The uncertainty as to the ultimate location of the
line of the road is recognized throughout the act, and
where any qualification is intended in the operation of
the grant of lands, from this circumstance, it is desig-

nated. Had a similar qualification upon the absolute grant of the right of way been intended, it can hardly be doubted that it would have been expressed. The fact that none is expressed is conclusive that none exists."

It is our opinion from reading that act itself and from precedent, that the act of congress of February 18, 1888, as amended by the act of February 13, 1889, was a present absolute grant of the right of way to the Choctaw Coal and Railway company through the then Indian Territory, and had priority over the rights of a homestead entryman under the act of March 2, 1889.

The railroad company had the right to locate its line over what in its judgment was "the most feasible and practicable route" and if the line thus located passed over the land of the plaintiff in error, it is a hardship from which the courts cannot legally give him relief.

The following are further authorities in point: *Bybee v. Oregon & C. Ry.* 139 U. S. 663; *Winona & St. P. R'y. v. Barney,* 113 U. S. 626; *Union Pac. Ry. v. Douglas County,* 31 Fed. Rep. 540; *Central Pac. Ry. v. Dyer,* 1 Sawyer, 641. The judgment of the court below is therefore affirmed.

Burford, J., having presided in the court below, not sitting; all the other Justices concurring.