SEABOARD AIR LINE RAILWAY COMPANY, A CORPORATION, *Appellant*, v. BOARD OF BOND TRUSTEES OF SPECIAL ROAD & BRIDGE DISTRICT NO. 1 OF ALACHUA COUNTY, FLORIDA, A BODY CORPORATE, *Appellee*.

Division B.

Opinion Filed April 13, 1926.

Petition for Rehearing Denied June 2, 1926.

614

*James F. Knight of Norfolk, Va., Fleming & Fleming* and *Hampton & Hampton,* Attorneys for Appellant.

*W. S. Broome, E. G. Baxter* and *S. L. Scruggs,* Attorneys for Appellee.

TERRELL, J.—In April, 1922, appellant, hereinafter called the railway company, filed its bill of complaint against the appellee, hereinafter called the bond trustees, seeking

to restrain them from taking possession of and constructing a hard surface road over certain lands in Alachua County, Florida, forming the right of way of the railway company to it by virtue of Chapter 610, Acts of 1855, Laws of Florida.

The bond trustees filed their answer to the bill of complaint and motion of the railway company to strike portions of the answer was denied in May, 1922. By leave of the court first obtained the railway company filed its amended bill of complaint instanter, the bond trustees filed their answer to the amended bill in June, 1922, and a motion on the part of the railway company to strike portions of the answer to the amended bill was promptly denied by the trial court. Appeal was taken from the order denying the motion to strike, both as to the original and amended bills of complaint, but proper disposition of the questions raised here requires a consideration only of the order denying the motion to strike portions of the answer to the amended bill.

The third, seventh, eighth and ninth grounds of the moion to strike will be treated together as they question the authority of the State to make a valid grant of the lands claimed by the railway company as its right of way over which the bond trustees were about to construct a hard surface road. Such assertion of lack of authority on the part of the State to make said grant is grounded on the fact that the Congressional Act granting said lands to the State among other things provided that the proceeds therefrom "Whether from sale or by direct appropriation in kind shall be applied exclusively as far as necessary, to the purpose of reclaiming said lands by means of levees and drains."

The lands embraced in the grant in question came to the State of Florida by virtue of the Swamp Land Grant Act

of Congress of September 28th, 1850, and were in turn granted to the railway company by virtue of Chapter 610, Acts of 1855, Laws of Florida. Under the provisions of the first mentioned of these Acts 20,422,303.70 acres of land have been patented to the State, of which 9,070,068.67 acres have been given in aid of railroad construction under the provisions of the second mentioned or similar Acts of the Legislature. The identical question raised here has been repeatedly decided by this court contrary to the contention of the bond trustees. Trustees I. I. Fund v. St. Johns Railway Co., 16 Fla. 531; Yager v. McNeill, 60 Fla. 400, 53 South. Rep. 12; Kittel v. Trustees Internal Improvement Fund of Florida, 139 Fed. Rep. 941. Even if this matter had not been thus settled the bond trustees are not in position to raise the question of the proper execution of the trust imposed in the State of Florida by the Act of Congress vesting in it title to the lands in question. The trust so imposed cannot be questioned by a private party, corporation or subordinate governmental agency like appellee. Trustees of the Internal Improvement Fund, v. Root, 63 Fla. 666, 58 South. Rep. 371; Kings County v. County of Tulare, 119 Cal. 509, 51 Pac. Rep. 866; American Immigrant Co. v. County of Adams, 100 U. S. 61.

The fifth and sixth grounds of the motion to strike will be treated jointly as they question the scope and effect of Section 28 of the granting Act, same being Chapter 610, Acts of 1855, Laws of Florida. Section 28 of Chapter 610, Laws of Florida, is as follows:

"*Be it Further Enacted,* That the right of way through the State lands for two hundred feet in width, is hereby granted to the different Railroad Companies on the routes indicated, with the right to cut timber, and procure the necessary earth and stone, from the adjacent land, to construct and re-

pair the same, and whenever it is necessary to construct turn-outs or side tracks, that this privilege may be extended to one hundred feet on each side of the road, and of such side track.''

Section 29 of the same Act is also pertinent to the discussion here, and is as follows:

*"Be it further Enacted,* That the alternative sections of the Swamp and Overflowed Lands, for six miles on each side may be granted by the General Assembly to such Rail Road Companies, to be hereafter chartered, as they may deem proper, on their compliance with the provisions of this Act, as to the manner of constructing the road and drainage, and the sale and transfer of the alternative Sections thus granted shall be in accordance with the provisions of this Act.''

It was also contended in brief that a correct determination of the scope and effect of Section 28 as above quoted involves an interpretation of certain portions of paragraphs two and three of Section 4354, Revised General Statutes of Florida, 1920, which are as follows:

"2. To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its road or canal, *but the real estate received by voluntary grant shall be held and used for purposes of such grants only.*

"3. To purchase, hold and use all such real estate and other property as may be necessary for the construction and maintenance of its roads or canal and the stations and other accommodations necessary to accomplish the objects of its incorporation, *and to sell, lease or buy any lands or real estate not necessary for its use.*''

Chapter 610 of the Laws of Florida was an "Act to provide for and encourage a liberal system of Internal Improvements in this State." The preamble to the Act more specifically defines its purpose in the following terms:

"Whereas, The Constitution of this State, declares that a liberal system of Internal Improvements, being essential to the development of the resources of the country, shall be encouraged by the Government of this State, and it shall be the duty of the General Assembly as soon as practicable, to ascertain by law, proper objects of improvements in relation to Roads, Canals, and Navigable Streams, and to provide for a suitable application of such funds as may be appropriated for such improvements."

To foster and promulgate the spirit of the title and preamble, Section 4, of Chapter 610 specified the lines of railroads and canals which the legislature at that time deemed proper improvements to be aided by the Act, said Section 4 is as follows:

"Be it further enacted, That a line of railroad from the St. Johns River, at Jacksonville, and the waters of Pensacola Bay, with an extension from suitable points on said line to St. Marks River, or Crooked River, at White Bluff on Apalachicola Bay, in Middle Florida, and to the waters of St. Andrews Bay, in West Florida, and a line from Amelia Island, on the Atlantic, to the waters of Tampa Bay, in South Florida, with an extension to Cedar Keys, in East Florida; also a canal from the waters of the St. Johns River on Lake Harney to the waters of the Indian River, are proper im-

provements to be aided from the Internal Improvement Fund, in manner as hereinafter provided.''

Section 6 of Chapter 610 in effect provides that before any railroad company shall be entitled to the provisions thereof it must first grade continuously twenty miles of its roadbed according to specifications as follows: (1) The line of road sixty feet from center to be cleared of all standing timber; (2) grading to be for single tracks except at turn-outs, depots and similar places where it shall be as specified by State Engineer. Roadbed to be twenty feet wide in cuts with ditches two to three feet in depth below grade with widths prescribed by State Engineer and eighteen feet wide on embankments at the grade line with slopes of one and one-half foot base to one foot of rise. All excavations and embankments to have perfect drainage. (3) All cross-ties delivered at the road, to be of heart of yellow pine, cypress, white, yellow, post, or live or spanish oak, white or red cedar, not less nine feet long, nine inches face and eight inches thick, to be carefully bedded and laid within one and a half feet from center to center. (4) Sufficient space to be left at all waterways for passage of the water, and all side ditches to carry off surface water to be constructed as required by the State Engineer. (5) All bridges over streams and draws therein where necessary to permit the passage of vessels to be constructed on approval of the State Engineer. (6) The guage of all roads to be uniformly five feet and connected continuously, so that cars or trains can pass over all routes indicated without changing freight. All railroad companies to adopt a uniform tariff for transportation of passengers and hauling freight of another company on usual and equitable terms without discrimination as to frieght and passengers of any company. (7) Rails to weigh not less than sixty

pounds per lienal yard, to be of best quality iron and fastened to crossties with best quality of spikes and plates. (8) Entire equipment to be first class and ample at all times to transport the passengers and freight normally offering. (9) No grade on routes indicated to exceed forty five feet per mile and no single curve to exceed three degrees of curvature or be adopted for use unless approved by the State Engineer.

Section Seven of the Act further provides that when the grading has been done and cross ties delivered agreeable to the foregoing provisions of Section 6, the railroad company shall give notice of such facts to the State Engineer who shall examine personally said twenty miles and if after full examination he shall approve the same, he shall so certify to the Trustees of the Internal Improvement Fund; and on the completion of the grading and furnishing of the crossties of each additional ten miles continuously the State Engineer shall also examine same and if constructed in accordance with the foregoing provisions he shall certify the same to the Trustees of the Internal Improvement Fund.

Other sections of the Act provide that the railroads aided thereby could be further assisted by any county, city or town through which or near which the same passed by subscribing for and holding stock in the said companies and the Trustees of the Internal Improvement Fund were authorized to underwrite the bonds of said companies. All the capital stock of said railroad companies so aided was forever exempt from taxation, all their assets used in construction, maintenance and operation were exempt from taxation for the peroid of thirty-five years from date of completion, and all offcers, servants and employees of said railroad companies were exempt from patrol, militia, public road or jury duty, all of which was imposed by the terms

of the Act as a prerequisite to acquire the right of way and lands in aid of construction provided by sections 28 and 29 above quoted.

At the time of the enactment of said Chapter 610, Florida was composed of thirty counties and had a population of about one hundred thousand (100,000) people. We had no railroads or other means of communication except by stage and steamboat. Land was cheap and population necessarily sparse. From the foregoing and other inducements not necessary to mention we must conclude that our legislature was making very liberal concessions to the railroad companies mentioned to the end that our people might be provided with the best and most accessible means of travel and transportation then known to civilized life. This spirit actuating our people was entirely in harmony with that actuating the people of every other part of our country at that time. The application of steam to the locomotive and the steam railway has recently been demonstrated to be feasible and every part of the country was vying with every other part in offering concessions to railroad companies to construct their lines of railroad to remote parts in aid of domestic expansion. It was the renaissance or the romance of railroad building. In the South and West and the middle West where the States and Federal government owned large areas of wild lands these concessions took the shape of liberal land grants by State and National governments in aid of railroad constructions. In the East where the States and Federal government had parted with title to their lands ralroad companies were incorporated by acts of the legislature and authorized to condemn rights of way from one to two hundred feet wide through the lands of private individuals and were offered other lberal inducements in lieu of lands to aid in the constructon of their systems of road.

In the light of the enumerated circumstances impelling the grant in question let us see how similar grants both as to rights of way and lands in aid of railroad construction have been interpreted in other jurisdictions. The leading Federal case shedding light on this question is Northern Pac. Ry. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. Rep. 671, wherein the court construing a right of way grant in a Congressional Act similar to that involved in the case at bar, said:

"Nor can it be rightfully contended that the portion of the right of way appropriated was not necessary for the execution of the powers conferred by Congress, for, as said in Northern Pacific Railroad Co. v. Smith, 171 U. S. 261, 275, speaking of the very grant under consideration: 'By granting a right of way four hundred feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance.' Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted right of way must be presumed to be necessary for the purpose of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes."

Kindred v. Union Pac. R. Co., 168 Fed. Rep. 648, affirmed in 225 U. S. 582, 32 Sup. Ct. Rep. 780; Northern Pac. Ry. Co. v. Smith, 171 U. S. 260, 18 Sup. Ct. Rep. 794; Northern Pac. R. Co. v. Ely, 197 U. S. 1, 25 Sup. Ct. Rep. 302; Great Northern R. Co. v. Steinke, 261 U. S. 119, 43 Sup. Ct. Rep.

316; Missouri, K. & T. Ry. Co. v. Watson, 74 Kan. 494, text 511, 87 Pac. Rep. 687, text 693; Oregon Shore Line Ry. Co. v. Quigley, 10 Idaho 770, text 783, 80 Pac. Rep. 401.

In the Oregon Short Line case, the Supreme Court of Idaho, construing the grant there in question said:

"It is also contended in this case that, notwithstanding the grant of the two hundred foot right of way, the railroad company cannot take a decree quieting title to more than it occupies and uses, or is actually necessary for the use of which the grant is made. We do not think this position can be sustained. Under these grants, the question of the reasonable amount of land necessary for such use is not open to consideraton and determinaton of the courts. The grant by Congress to the Utah and Northern Railway Company of a right of way one hundred feet on each side of the central line of its track was a conclusive determination of the reasonable and necessary quantity of land to be dedicated to such use, and carried with it the right of possession in the grantee therein named and its successors."

The construction of Federal grant by a State court is necessarily controlled by the Federal decisions on the same subject matter. Northern Pac. Ry. Co. v. Townsend, *supra;* Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. Rep. 548; Missouri, K. & T. Ry. Co. v. Watson, *supra.*

In construing State legislative grants such as are involved here and were before the court in Northern Pacific Ry. Co. v Townsend, and Oregon Short Line Ry. Co. v. Quigley, *supra,* the State Supreme Courts have generally followed the rule as announced in these cases unless the

condition of the grant was modified by constitutional or statutory provisions. Fort Worth & L C. Ry. Co. v. Western Stockyards Co., (Tex. Civ. App.) 151 S. W. Rep. 1172; Central Pac. R. Co. v. Droge, 171 Cal. 32, 151 Pac. Rep. 663; Croley v. St. Louis S. W. Ry. Co., of Texas, (Tex. Civ. App.) 56 S. W. Rep. 615; Clendaniel v. Conrad, 3 Boyce (Del.) 549, 83 Atl. Rep. 1036; Pennsylvania R. Co. v. Borough of Freeport, 138 Pa. St. 91, 20 Atl. Rep. 940; McLucas v. St. Joseph & G. I. R. Co., 67 Neb. 603, 93 N. W. Rep. 928; 97 N. W. Rep. 312; Western New York & P. R. Co. v. Vulcan Foundry & Machine Co., 251 Pa. 383, 96 Atl. Rep. 830; 22 R. C. L. 869; Conwell v. Philadelphia & R. R. Co., 241 Pa. 172, 88 Atl. Rep. 417. See Note to Dublin v. Ohio River R. Co. 73 W. Va. 166, 80 S. E. Rep. 145, L. R. A. 1916B 653, text 657.

The same rule is generally applied in those States where the railroad companies incorporated by an Act of the Legislature and authorized to acquire by condemnation or otherwise its right of way through private premises. Seaboard Air Line R. v. Olive, 142 N. C. 257, 55 S. E. Rep. 263; Railroad v. French, 100 Tenn. 209, 43 S. W. Rep. 771, 66 Am. St. Rep. 752; East Tennessee, V. & G. Ry. Co. v. Telford's Ex'rs, 89 Tenn. 293, 14 S. W. Rep. 776; Southern Pac. Co. v. Hyatt, 132 Cal. 240, 64 Pac. Rep. 272; Northern Counties Inv. Trust v. Enyard, 24 Wash. 366, 64 Pac. Rep. 516; McLucas v. St. Joseph & G. I. R. Co., 67 Neb. 603, 93 N. W. Rep. 928; 97 N. W. Rep. 312; Roberts v. Sioux City & P. R. Co., 73 Neb. 8, 102 N. W. Rep. 60.

This brings us to the question of adverse possession which has been injected as one of the determining influences on the scope and effect of Section 28. In this connection we may say that the authorities are without conflict in holding that the right of way so granted or condemned cannot under any circumstances be acquired by

prescription or adverse possession, though in some states, as in Tennessee, it has been held that such right of way or portion of it not in actual use might be used for agriculture or other purposes not inconsistent with the grant so long as not necessary for railroad purposes.

We also note a strong line of decisions some of which are identical with the foregoing holding in effect that railroads are public highways, that the public is vitally interested in the efficiency of the service to be rendered by them, and that for reasons of public policy the doctrine of adverse possession should no more apply to their rights of way than it should to public highways in general. Sapp v. Northern Cent. Ry. Co., 51 Md. 115; Northern Pac. R. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. Rep. 671; Pennsylvania R. Co. v. Borough of Freeport 138 Pa. St. 91, 20 Atl. Rep. 940; Railroad v. French, 100 Tenn. 209, 43 S. W. Rep. 771, 66 Am. St. Rep. 752; Southern Pac. Co. v. Hyatt, 132 Cal. 240, 64 Pac. Rep. 272, 54 L. R. A. 522.

Opposed to the view last expressed we find much authority to the effect that a railroad company does not stand on a par with public highways in general and that a railroad company is under the same obligation to keep trespassers off its right of way as private parties are to keep them off their private premises. Georgia Railroad and Banking Co. v. Gardner, 113 Ga. 897, 39 S. E. Rep. 299; Illinois Cent. R. Co. v. Wakefield, 173 Ill. 564, 50 N. E. Rep. 1002; Pittsburgh, C. C. and St. L. R. Co. v. Jellison, 42 Ind. App. 628, 86 N. E. Rep. 501; Louisville & N. R. Co. v. Smith, 125 Ky. 336, 101 S. W. Rep. 317, 128 Am. St. Rep. 254; Paxton v. Yazoo & M. V. R. Co., 76 Miss. 536, 24 South. Rep. 536; Walsh v. Chicago, B. & K. C. Ry. Co., 19 Mo. App. 127; Spottiswoode v. Morris & E. R. Co., 61 N. J. L. 322, 40 Atl. Rep. 505; Southern Ry. v. Gossett,

79 S. C. 372, 60 S. E. Rep. 956; Texas & P. R. Co. v. Maynard, (Tex. Civ. App.) 51 S. W. Rep. 255; Northern Pac. R. Co. v. City of Spokane, 45 Wash. 229, 88 Pac. Rep. 135; Alexander City Union Warehouse & Storage Co. v. Central of Georgia R .Co., 182 Ala. 516, 62 South. Rep. 745; New York, N. H. & H. R. Co. v. Cella, 86 Conn. 275, 85 Atl. Rep. 521; Mobile & O. R. Co. v. Strain, 125 Miss. 697, 88 South. Rep. 274; Dulin v. Ohio River R. Co., 73 W. Va. 166, 80 S. E. Rep. 145.

We have examined all cases cited in the preceding paragraph and others of similar import and none of them apply to public grants. Most of them apply to rights of way acquired by private grant or purchase and when the lands so claimed have been fenced and in actual use by the claimant for the statutory period adverse and hostile to the claim of the railway company. A few of these cases apply to rights of way acquired by condemnation and while in Kentucky and a few other States the courts have held that the right of way of the railway company in its right of way so acquired can be extinguished by adverse possession, others equally as respectable hold that the interest of the railway company acquired by condemnation being a mere easement for railroad purposes cannot be extinguished by adverse user, that those enjoying such user were tenants by sufferance and would be compelled to abandon the right of way when it become necessary to use it for railroad purposes.

In some States, such as Massachusetts, Connecticut, Missouri, Nebraska, North Carolina, New Hampshire, Vermont, and others, the question of whether or not a railroad right of way can be acquired by adverse possession is controlled by constitutional and statutory provisions, all of which so far as we have been able to find are in line with the law as announced in the Townsend and Oregon Short Line

cases and in other State and Federal cases construing public grants of land for right of way purposes. Fisher v. New York & N. E. R. R. Co., 135 Mass. 107; Gay v. Boston & A. R. R., 141 Mass. 407, 6 N. E. Rep. 236; Turner v. Fitchburg, R. Co., 145 Mass. 433, 14 N. E. Rep. 627; Purifoy v. Richmond & D. R. Co., 108 N. C. 100, 12 S. E. Rep. 741; Costello v. Grand Trunk Ry. Co., 70 N. H. 403, 47 Atl. Rep. 265; Drouin v. Boston & M. R. Co., 74 Vt. 343, 25 Atl. Rep. 957; New York, N. H. & H. R. Co., v. Cella, 86 Conn. 275, 85 Atl. Rep. 521; McLucas v. St. Joseph & G. I. R. Co., 67 Neb. 603, 93 N. W. Rep. 928; 97 N. W. Rep. 312.

To establish title by adverse possession in this State it must be shown that for a period of seven years the claimant or his predecessors in title held hostile possession with or without color of title for said period and that such possession must be actual, continuous, exclusive, open and notorious, Secs. 2935, 2936, Rev. Gen. Stats. of Fla. 1920. If a right of way easement of a railway company has been acquired by condemnation, prescription or otherwise, the use by adjoining land owners of the unused parts of such right of way for grazing and cultivation has been held as not adverse to the enjoyment of the easement. Roberts v. Sioux City & P. R. Co., 73 Neb. 8, 102 N. W. Rep. 60, 2 L. R. A. (N. S.) 272.

In Smith v. Pittsburgh C. C. & St. Louis Ry. Co., 26 Ohio Cir. Ct. Rep. 44, it was held that whether a railroad company has a fee or an easement, any permitted use by an abutting land owner of a part of the right of way up and until needed for railway purposes exclusively cannot be said to be adverse in any hostile sense. Slocumb v. C. B. & Q. R. Co., 57 Iowa 675, 11 N. W. Rep. 641; Sapp v. Northern Cent. R. Co., 51 Md. 115.

In Northern Counties Inv. Trust v. Enyard, 24 Wash. 366, 64 Pac. Rep. 516, it was held that when the grantors of plaintiffs in ejectment occupied, cleared, fenced and cul-

tivated land for over ten years, which was subject to a railroad right of way, such occupation was not adverse, but permissive since it was not inconsistent with such right of way, and hence the railroad easement was not extinguished by plaintiff's possession.

In Mobile & O. R. Co. v. Donovan, 104 Tenn. 465, 58 S. W. Rep. 309, it was also held that occupation of a right of way by the owner of the fee, so long as it was not required for railroad purposes, is not adverse so as to start the statute of limitations running against the railroad company.

From an examination of many cases the authorities are in conflict on the question of whether or not the fencing and cultivation of a railroad right of way, or of such portions thereof as are not covered by the tracks and in actual use, is so inconsistent with the rights of the railroad as to amount to adverse possession. Cases supporting the affirmative of the issue are, Maysville & B. S. R. Co. v. Holton, 100 Ky. 665, 39 S. W. Rep. 27; Illinois Cent. R. Co. v. Houghton, 126 Ill. 233, 18 N. E. Rep. 301, 1 L. R. A. 213; Matthews v. Lake Shore & M. S. Ry. Co., 110 Mich. 170, 67 N. W. Rep. 1111; Spottiswoode v. Morris & E. R. Co., 61 N. J. L. 322, 40 Atl. Rep. 505. Where the English rule is discussed. Cases supporting the negative of this issue are Virginia & S. W. R. Co. v. Crow, 108 Tenn. 17, 64 S. W. Rep. 485; Northern Counties Inv. Trust v. Enyard, 24 Wash. 366, 64 Pac. Rep. 516; East Tennessee, V. & G. Ry. Co. v. Telford's Ex'rs, 89 Tenn. 293, 14 S. W. Rep. 776, 10 L. R. A. 855, and other cases cited in this opinion.

To recapitulate briefly we have then in the country railroad rights of way acquired by legislative and congressional grant, private grant, purchase, gift, condemnation and prescription. As to legislative and congressional grants of such rights of way, unless modified by statute, the general rule is that the area or dimensions of the grant are not open to judicial investigation and determination, that such ques-

tions were concluded by the authority providing the grant and that it was intended to secure to the grantee the permanent enjoyment of the granted right of way so long as the railroad of the required character should be operated upon it regardless of any new or unexpected conditions that may subsequently arise. Northern Pac. Ry. Co. v. Townsend, *supra;* Oregon Short Line Ry. Co. v. Quigley, *supra;* Pennsylvania R. Co. v. Borough of Freeport, *supra.*

We have found no exceptions to this rule except in Arkansas and Illinois. In Arkansas the granting act was an elastic one providing a right of way *"not exceeding one hundred feet in width on each side of and through its entire length."* The railroad company on acquiring the right of way constructed a fence enclosing fifty feet on each side of the railroad. The plaintiff enclosed with a fence his land up to the fence along the right of way, cleared, occupied and cultivated the land continuously for fourteen years, and the Arkansas court held that under such showing the lands not included in the fenced right of way were not necessary for railroad purposes and were acquired by adverse possession against the claim of the railroad company. St. Louis, I. M. & S. R. Co. v. Martin, 104 Ark. 274, 149 S. W. Rep. 69. In Illinois the railroad company was granted a right of way of 200 feet in width, but was required to construct a fence separating the right of way from the adjoining land on each side. Shortly after acquiring its right of way the company constructed a substantial fence fifty feet from the center of its road on each side. The Illinois court held this conduct of the railroad company to be an abandonment of that part of the right of way granted but not inclosed, and since it had been in continuous occupation and cultivation for more than twenty years it was lost to the railroad company. Illinois Cent. R. Co. v. Moore, 160 Ill. 9, 43 N. E. Rep. 364; Spottiswoode v. Morris & E. R. Co., 61 N. J. L. 322, 40 Atl. Rep. 505, where

the Illinois rule is discussed and other Illinois cases cited. These facts would clearly lift the Arkansas and Illinois cases from the general rule.

As to rights of way acquired by private grant, purchase, gift, condemnation and prescription it has already been pointed out in this opinion that in many States these are controlled by statute and the statutes so controlling apply the rule announced in the Townsend and Oregon Short Line cases, *supra*. In States where no controlling statutes intervene the courts have generally held that such parts of a railroad right of way as are acquired by private grant, purchase, gift, condemnation or prescription and are not inclosed or covered by the tracks of the railroad company and its erection may be acquired against it by adverse possession. There are some notable exceptions to this rule as to those acquired by condemnation and prescription, some courts holding as to these, the weight of authority is, that they cannot be acquired by adverse possession against the railroad company.

This brings us to a determination of the scope and effect of the grant involved in the case at bar, and if we are to be guided by the precedents presented from a careful analysis of the cases here cited we are impressed with the view that the grant in the instant case, like all others of a kindred nature, must be interpreted in the light of controlling statutes and the peculiar facts affecting it.

Chapter 610, Laws of Florida, was signed by the Governor and became effective January 5th, 1855. In our examination of legislative and congressional grants we have found none parallel to this. It designated specific roads to be aided as objects of Internal Improvement, required them to accept the provisions of the Act within six months and defined the conditions that the designated roads must meet in order that the benefits of the Acts might become available to them. These conditions were more fully defined in

the sections of the granting Act quoted and outlined early in this opinion, and when complied with constituted a closed contract between the railroad companies and the State for the purpose named in the Act.

In this view of the case paragraphs two and three of Section 4354, Revised General Statutes of Florida, 1920, being a part of Section 10 of Chapter 1987, Acts of 1874, Laws of Florida, became unimportant and could have no bearing whatever on Chapter 610 because the Act of 1874 was ''An Act to provide a general law for the incorporation of Railroads and Canals'' in this State, while Chapter 610 was ''An Act to provide for and encourage a liberal system of Internal Improvements in this State.'' Chapter 1987 was enacted twenty years subsequent to Chapter 610, was prospective in its effect, dealt with another subject-matter, made no reference to nor was it in any way connected with Chapter 610, and every right acquired by the railroad companies under Chapter 610 had accrued long before Chapter 1987 was enacted. A careful analysis of the title, the preamble, Sections one, four, five, six, seven, fifteen, eighteen, twenty, twenty-two, twenty-eight, and twenty-nine of Chapter 610 can leave no doubt as to the purpose of said Act. The salient features of these sections have been discussed in this opinion; the record shows that the road was completed in 1859, and under the terms of the Act it being one of the roads to be aided as a work of internal improvement, we are well within the decided cases in applying the rule announced in the Townsend and Oregon Short Line cases which is in effect that the width, area, necessity for, and reasonableness of the right of way grant were conclusively determined by the legislature and none of these matters are subject to attack at this time.

The tenth, eleventh, twelfth, thirteenth and fourteenth grounds of the motion to strike present the question that

appellant has lost portions of the right of way in question by conveyance to third parties.

This question is predicated on the premise that the appellant having acquired title under Section 29 to some of the sections of land through which its right of way ran, acquired under Section 28, when said sections were conveyed, no right of way having been excepted in the deed of conveyances, none can now be claimed except that actually occupied and used by the railroad.

All rights of way acquired by virtue of Section 28, Chapter 610, were defined as to width in the Act, and as to survey and definite locations by plat filed in the office of the Secretary of State as provided in Section 20 of said Act. No such purchasers from the appellant or its predecessors are here complaining, but if they were we think they took title subject to the right of way grant which was in aid of internal improvement. To this extent the grant was impressed with a public use and it was accepted by appellants' predecessors on the implied condition that it be devoted to the uses designated in the Act. In its conclusiveness there is no better evidence of title than a legislative grant. The granting Act is equal in dignity to a patent and all those acquiring title to public lands over which a right of way has been granted take subject to such grant. 32 Cyc. 996; Southern Pac. Co. v. City of Reno, 257 Fed. Rep. 450; Lewis v. Rio Grande Western Ry. Co., 17 Utah 504, 54 Pac. Rep. 981; Nadeau v. Union Pac. R. Co., 253 U. S. 442, 40 Sup. Ct. Rep. 570; Northern Pac. R. Co. v. Wadekamper, 70 Wash. 392, 126 Pac. Rep. 909; Doran v. Central Pac. R. Co., 24 Cal. 246; Kinion v. Kansas City, Ft. S. & M. R. Co., 118 Mo. 577, 24 S. W. Rep. 636; Churchill v. Choctaw Ry. Co., 4 Okla. 462, 46 Pac. Rep. 503.

The fact that the predecessors in title of appellants were as to some sections the beneficiaries of both the right of way and the grant in aid of construction is not material.

The Courts have repeatedly recognized a marked distinction between grants of right of way and grants in aid of railroad construction. Both are grants in *praesenti,* but the right of way grant is unlike the grant in aid of construction in that it takes effect on the définite location of the road as of the date of the grant. Northern Pac. R. Co. v. Wadekamper, *supra.* Examinations of the granting act involved here reveals other distinctions that have been fully noted.

If it be true that no right of way can now be claimed by the appellant except that in actual use by it in those sections where its predecessors in title took both the right of way and the grant in aid of construction is not material. and its predecessors made no right of way exceptions in conveying the lands in aid of construction, then it necessarily follows that the estates of the appellant in those sections where it took both the right of way and the lands in aid of construction merged. Where two estates merge they must be in one and the same person at one and the same time and in one and the same right. Jackson v. Relf, 26 Fla. 465, 8 South. Rep. 184; 10 R. C. L. 666; Forthman v. Deters, 206 Ill.1 59, 69 N. E. Rep. 97, 99 Am. St. Rep. Note p. 152, where the question of merger of estates is fully treated; H. A. & L. D. Holland Co. v. Northern Pac. R. Co., 208 Fed. Rep. 598, approved in 214 Fed. Rep. 920. The estates here brought in question may have been in one and the same persons at one and the same time, but by the very nature of the Act creating them they were held by different right and for a different purpose. The grant of the right of way was impressed with a public use, while the grant of the lands in aid of construction was with the express purpose that they be sold in order that the work of internal improvement be aided. We can see no theory under which the two estates would merge, or by which the

grantees of appellant as to these sections would be different from its grantees as to other sections.

The first, second, fifteenth, sixteenth, seventeenth and eighteenth grounds of the motion to strike will be treated together as they present the question of whether or not the right of way in question or any portion thereof can be lost by continuous and long permissive use.

The record discloses that some twelve years prior to the institution of this suit the appellee or its predecessors established the public road in question from Gainesville to Waldo, in Alachua County, Florida; that the said road has been continuously used by the public since it was established as the main highway between the said towns, and that no objection has ever been raised by appellant or any one in its behalf, to said use till the institution of this suit. The record also discloses that the public road in question is on the two hundred-foot right of way granted to appellant by Section 28 of Chapter 610.

Appellee contends that having passively acquiesced in the use by the public of this portion of the lands so granted it for right of way purposes for all these years, said lands have been forfeited and can no longer be claimed by the appellant as part of its right of way. This contention is disposed of by what we have already said on the subject of adverse possession, but it is not out of place to say here that if this had been a right of way acquired by purchase or private grant such might have been the law; however, our courts as shown in this opinion have recognized a clear distinction between rights of way thus acquired and those acquired by legislative or public grant, and we think there are fundamental differences between the two. A right of way by purchase or private grant is actuated primarily by the hope of reward or profit flowing to the grantor either directly or indirectly, while legislative or public grants are

actuated by the anticipation of benefits flowing to the whole people which is accomplished by inducing immigration to the remote parts of the forest, the prairie and the valley, stimulating commercial, industrial or domestic expansion and impregnating all of these material benefits with the arts of civilization and the religion of Judea. In addition to this a legislative grant may be termed a weaving or conversion of the sovereign legislative will of the State or the Nation into the law of the land and it is not in the power of the courts to add to or take from such statutes.

Public grants like that involved in the instant case can be justified on no other grounds but the ones enumerated here, or those of like import. To one familiar with the history of our State every reason for the granting Act in question is evident. This being true, the public acquired a material interest in the road, and to hold that any portion of said right of way can be acquired by long permissive use would be totally inconsistent with the interest of the general public in the grant. It is not shown that the right of way has been abandoned or that there are intervening statutes that would authorize the railroad company to release by sale or grant any oprtion of said grant. In granting a right of way two hundred feet wide in aid of internal improvement the legislature must have had in mind future needs and development of the roads and to hold that it could be adversely acquired except by abandonment or by virtue of the operation of intervening statutes would be inconsistent with the interest of the public therein. It could not have been contemplated that at the time the grant was made a right of way two hundred feet wide was necessary for railroad purposes, and no particular date could have been named when such necessity would arise. The construction of tracks and other erections throughout the entire length of the right of way was in the nature of conditions, there existing ample assertion on the part of the rail-

road company of title to the entire grant and the act itself was notice to the world of the grant. It would therefore be unreasonable to hold that the mere non-user of a part of the grant parallel with and contiguous to that in actual use would revert to the public because the public had enjoyed a permissive, and not a hostile use of it. Pennsylvania R. Co. v. Borough of Freeport, 138 Pa. St. 91, 20 Atl. Rep. 940; Southern R. Co. v. Vann, 142 Tenn. 76; 216 S. W. Rep. 727; 22 R. C. L. 869.

The following State and Federal cases involve grants strikingly similar to that involved in this particular case and are illuminative of the points in issue: Powell v. Atchison, T. & S. F. R. Co., 215 Mo. 339, 114 S. W. Rep. 1067; Chicago, M. & St. P. R. Co. v. Hanken, 140 Iowa 372, 118 N. W. Rep. 527; Union Pac. R. Co. v. Theden, 104 Kan. 289, 178 Pac. Rep. 441; McLucas v. St. Joseph & G. I. R. Co. 67 Neb. 603, 93 N. W. Rep. 928; 97 N. W. Rep. 312; Western New York & P. R. Co. v. Vulcan Foundry & Machine Co., 251 Pa. St. 383, 96 Atl. Rep. 830; Central Pac. R. Co. v. Droge, 171 Cal. 32, 151 Pac. Rep. 663; Great Northern R. Co. v. Steinke, 261 U. S. 119, 43 Sup. Ct. Rep. 316; Stuart v. Union Pac. R. Co., 227 U. S. 342, Sup. Ct. Rep. 338; Kindred v. Union Pac. R. Co., 225 U. S. 582, 32 Sup. Ct. Rep. 780; Note to Dulin v. Ohio River R. Co., *supra;* 32 Cyc. 996, citing many cases; Denver & R. G. R. Co. v. Mills, 222 Fed. Rep. 481; Barnes v. Southern Pac. Co., 300 Fed. Rep. 481.

The record shows a permissive use of a portion of the granted right of way on the part of the public for twelve years or more prior to the institution of this suit. It is not shown that such use is inconsistent with the purpose of the grant, or that that part of the right of way so used by the public is at this time, or will be at any near future date necessary for railroad purposes. It is a well known fact

that beaten paths and highways may be found and daily used along every railroad track in the country. Where such highways traverse public grants like the one in question, they cannot ripen into title against the railroad company by adverse possession or permissive user; but after long indulgence under the circumstances of this case they will not be restrained unless it can be shown that their use is inconsistent with the grant for railroad purposes, or that the part so used by the public is necessary for the purpose of the grant. East Fla. Tel. Co. v. Seaboard Air Line Ry. Co., 85 Fla. 378, 96 South. Rep. 95; Mobile & O. R. Co. v. Donovan, 104 Tenn. 465, 58 S. W. Rep. 309; Northern Counties Inv. Trust v. Enyard, 24 Wash. 366, 64 Pac. Rep. 516; Railroad v. French, 100 Tenn. 209, 43 S. W. Rep. 771, supra; Pennsylvania R. Co. v. Borough of Freeport, 138 Pa. St. 91, 20 Atl. Rep. 940; Cases cited in Note to Dulin v. Ohio River R. Co. supra. McLucas v. S. Joseph & R. I. Ry. Co. 67 Neb. 603.

The decree below is therefore reversed, with directions to proceed in line with the view expressed in this opinion.

Reversed.

Brown, C. J., and Ellis, Strum and Buford, J. J., concur.

Whitfield, J., dissents in part.

———

Whitfield, J., dissenting in part:

The mere construction and use of a hard surfaced or other public highway longitudinally upon the unused portion of a railroad right of way may not ordinarily be re-

garded as an adverse user, but as a continuing permissive use subject to the lawful and reasonable demands of the railroad company, should the space occupied by the public highway become necessary for proper railroad purposes, before the public acquires a right to use a part of the railroad right of way by condemnation or other lawful means. An injunction does not appear to be the appropriate remedy, even if complainant has title as alleged, in view of the averments that a public road has existed on the *locus in quo* for a number of years, the public authorities having the power of eminent domain for public road purposes. Secs. 1195, 1197, 1612, 1654, Rev. Gen. Stats. 1920. See East Florida Telephone Co. v. Seaboard Air Line Ry. Co. 85 Fla. 378, 96 South. Rep. 95.

The complainant must show title or right to the *locus in quo* to maintain this suit.

Where *Congress* grants a right of way to a common carrier railroad company through the public domain of the United States, such right of way is held to be "a limited fee, made on an implied condition of reverter" *to the United States;* and as the United States retains a proprietary interest in the land, such right of way is not subject to alienation or to the acquisition of title by adverse possession, under the laws of a State (Northern Pac. R. Co. v. Ely, 197, U. S. 1, 25 Sup. Ct. Rep. 302; Northern Pac: R. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. Rep. 671; Rio Grande Western R. Co. v. Stringham, 239 U. S. 44, 36 Sup. Ct. Rep. 5; Great Northern R. Co. v. Steinke, 261 U. S. 119, 43 Sup. Ct. Rep. 316, L. R. A. 1916B 658) except as may be permitted by Acts of Congress. Stuart v. Union Pac. R. Co., 227 U. S. 342, 23 Sup. Ct. Rep. 338; Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U. S. 190, 34 Sup. Ct. Rep. 104; Union Pac. R. Co. v. Snow, 231 U. S. 204, 34 Sup. Ct. Rep. 104; Northern Pac. R. Co.

v. Concannon, 239 U. S. 382, 36 Sup. Ct. Rep. 156; Chap. 1782, 23 Stats. at Large 538, April 28, 1904; Chap. 181 U. S. Stats. at Large, June 24, 1912. See also State of Alabama v. Schmidt, 232 U. S. 168, 34 Sup. Ct. Rep. 301; Rudy v. Rossi, 248 U. S. 104, 39 Sup. Ct. Rep. 46. In the Federal grants of railroad rights of way, the United States retained the ultimate fee to accomplish its purposes in granting ''the right of way through the public lands.'' Northern Pac. R. Co. v. Ely, 197 U. S. 1, 25 Sup Ct. Rep. 302; Northern Pac. R. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. Rep. 671.

The above rule does not apply to a railroad right of way obtained by purchase, condemnation or gift, except as to space actually occupied or reserved for right of way purposes. See Missouri, K. & T. R. Co. v. Cook, 163 U. S. 491, text 498, 16 Sup. Ct. Rep. 1093; Silver Springs, O. & G. R. Co. v. Van Ness, 45 Fla. 559, 34 South. Rep. 844; City of Raton v. Pollard, 270 Fed. 5; Dulin v. Ohio River R. Co., 73 West Va. 166, 80 S. E. Rep. 145, L. R. A. 1916B 653, Ann. Cas. 1916B 1183; Alexander City Union Warehouse & Storage Co. v. Central of Georgia R. Co., 182 Ala. 516, 62 South. Rep. 745; Mobile & G. R. Co. v. Rutherford, 184 Ala. 203; 63 South. Rep. 1003; Mobile & O. R. Co. v. Strain, 125 Miss. 697, 88 South. Rep. 274; 22 R. C. L. 868; 87 Am. Rep. 781, Note: Spottiswoode v. Morris & E. R. Co., 61 N. J. L. 322, 40 Atl. Rep. 505, affirmed in 63 N. J. L. 667, 44 Atl. Rep. 1100; Louisville & N. R. Co. v. Smith, 125 Ky. 336, 101 S. W. Rep. 317, 128 Am. St. Rep. 254; Matthews v. Lake Shore & M. S. Ry. Co., 110 Mich. 170, 67 N. W. Rep. 1111, 64 Am. St. Rep. 336; Pittsburg, C. C. & St. L. Ry. Co. v. Stickley, 155 Ind. 312, 58 N. E. Rep. 192; St. Louis & S. F. R. Co. v. Ruttan, 90 Ark. 178, 118 S. W. Rep. 705; Louisville & N. R. Co. v. Quinn, 94 Ky. 310, 22 S. W. Rep. 221. See also New York

N. H. & H. R. Co. v. Cella, 86 Conn. 275, 85 Atl. Rep. 521; Denver & R. G. R. Co. v. Mills, 222 Fed Rep. 481; 2 C. J. 226; 29 C. J. 387; 22 R. C. L. 868; 1 R. C. L. 737.

In Florida by statute a railroad company may sell any of its "lands or real estate not necessary for its use." Sec. 4354 Par. 3, Rev. Gen. Stats. 1920. The right of way in this case was granted by the State through State lands, and is not subject to the Federal rule. The Federal government has no interest in the grant and it is subject to the laws of the State. See St. Louis, I. M. & S. Ry. Co. v. Martin, 104 Ark. 274, 149 S. W. Rep. 69; Ft. Worth & D. C. Ry. Co. v. Western Stockyards Co., (Tex. Civ. App.) 151 S. W. Rep. 1172; Illinois Central R. Co. v. Moore, 160 Ill. 9, 43 N. E. Rep. 364; Illinois Cent. R. Co. v. Wakefield, 173 Ill. 564, 50 N. E. Rep. 1002; 2 L. R. A. (N. S.) 273 Notes; 19 L. R. A. (N. S.) 216 Note; L. R. A. 1916B 657 Note; 2 C. J. 218, 225.

The statutory grant of a railroad right of way through State lands cannot be challenged by the defendants in this proceeding (Trustees of the Internal Improvement Fund v. St. Johns Ry. Co., 16 Fla. 531; Trustees of Internal Improvement Fund v. Root, 63 Fla. 666, 58 South. Rep. 371), therefore the portions of the answer on that subject may well have been stricken.

In this case the bill in effect alleges a statutory grant by the State to the complainant's predecessor railroad company of a "right of way through the State lands for two hundred feet in width," and that subsequent to the inuring of said right of way, a confirmatory deed to certain of the lands covered by the granted right of way was issued by the State of Florida to the complainant's predecessor in title, and that certain of the lands covered by the right of way were subsequently conveyed by the State of Florida to individuals. Thus the lands on which the right of way

existed that were conveyed by the State to the railroad company, became vested in fee simple absolute in the company, no contrary statutory intent appearing; and the conveyance by the State to individuals of lands covered by the existing right of way, were subject to the railroad company's rights under the prior grant of a "right of way through" such "State lands." If the right of way be abandoned the lands covered by the right of way belong to the railroad company or other grantee of the ultimate fee. See Denver & R. G. R. Co. v. Mills, 222 Fed. Rep. 481; Barnes v. Southern Pac. Co., 300 Fed Rep. 481.

The answer in effect avers that the railroad company conveyed certain of the lands covered by the right of way to other parties without reserving any right of way, and that the only right of way complainant has, is a strip less than fifty feet in width on each side of its track, and that the *locus in quo* is not within that space. Such portions of the answer in view of other averments, may be material on an issue as to whether the complainant has title to the *locus in quo*, particularly in view of the right of the railroad company under Section 4354, Par. 3, Rev. Gen. Stats. 1920, "to sell any lands or real estate not necessary for its use." See Seaboard Air Line Ry. Co. v. McRainey, 69 Fla. 462, 68 South. Rep. 753.

The decision in Holland Co. v. Northern Pac. Ry. Co., 214 Fed. Rep. 920, that a railroad company cannot dedicate to other uses any portion of its right of way that was granted to it by Congress, "through the public domain" of the United States even though the lands covered by the right of way be also granted to the railroad company by the United States was unnecessary because the dedication in that case, 208 Fed. 598, 600, reserved the strip in controversy for railroad purposes, and the decision does not accord with Union Pac. R. Co. v. Laramie Stock Yards Co.,

231 U. S. 190, 34 Sup. Ct. Rep. 101, Northern Pac. R. Co.
v. Concannon, 239 U. S. 382, 36 Sup. Ct.. Rep. 156, and
Chapter 181 (37th U. S. State, at Large), and is not ap-
plicable to a grant by the State of a "right of way through
State lands," when the State subsequently conveys to the
railroad company the ultimate fee in the lands on which
the granted right of way exists, since the State laws are
applicable to rights of way and to lands granted to the
railroad company by the State, and a State statute ex-
pressly authorizes a railroad company "to sell or lease any
lands or real estate not necessary for its use," while the
State laws are not applicable to grants of railroad rights
of way made by the Congress, the dominant Federal sover-
eign retaining a proprietary interest in the lands (North-
ern Pac. R. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct.
Rep. 671), except as may be permitted by Congress. North-
ern Pac. R. Co. v. Ely, 197, U. S. 1, 25 Sup. Ct. Rep. 302;
Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U. S.
190, 34 Sup. Ct. Rep. 101; Northern Pac. R. Co. v. Concan-
non, 239 U. S. 382, 36 Sup. Ct. Rep. 156; Chap. 181 (37
U. S. Stats. at Large, Part 1) June 24, 1912; Chap. 1782,
33 U. S. Stats. at Large, 538, Apr. 28, 1904.

Limitations of the doctrine of merger do not affect the
provision of the statute authorizing sales to be made.

If the State laws relating to alienation and to title by
adverse possession are with the permission of Congress
applicable to a railroad right of way granted by Congress
through the public domain of the United States, when the
"absolute or fee simple title," to the lands covered by the
right of way grant, except to a width of "fifty feet on each
side of the center of the main track," is surrendered by the
United States (Sec. 3, Chap. 181, 37 U. S. Stats. at Large,
Part 1, June 24, 1912; Union Pac. R. Co. v. Thedan, 104
Kan. 289, 178 Pac. Rep. 441), certainly such State laws are
applicable to a railroad right of way granted by the State

through State lands, at least for such portion as is not needed or used or reserved for railroad purposes, where the absolute fee is subsequently conveyed to the railroad company and the right of way granted by the State is not accepted from the operation of State laws, but on the contrary, the statute expressly confers upon the railroad company power "to sell any lands or real estate not necessary to its use." See State of Alabama v. Schmidt, 232 U. S. 168, 34 Sup. Ct. Rep. 301; 2 C. J. 226. Railroad companies have the right of alienation of property owned by them except as may be restrained by valid laws.

The provisions that "the real estate received by voluntary grant shall be held and used for the purposes of such grant only," relates to the use of such property, and is not inconsistent with the express authority "to sell, lease or buy any lands or real estate not necessary for its use." Railroad rights of way acquired by purchase, gift, condemnation or prescription are not required to be 200 feet in width; and the statute granting a right of way through State lands does not expressly or by implication require a 200 feet right of way to be maintained or reserved. Nor does the statute forbid alienation of portions of the granted right of way, but the quoted statute authorizes sales by the railroad company of "any lands or real estate not necessary for its use." Where the ultimate fee passes from the State under a grant or a patent, the State has then no proprietary interest in the lands and no longer preserves the 200 feet width of a granted right of way; and if sales of portions thereof not needed for right of way purposes are made, and subsequently such portions are needed, they can be re-acquired by purchase or condemnation under express provisions of the statute. There is nothing in the Statute to indicate an intent to preserve by law the full width of rights of way granted through State lands at least after the ultimate fee passes from the State; or to restrain the right of

alienation except as to lands that are necessary for railroad use. Where the Congress permits State laws to operate upon rights of way granted to railroads through Federal lands, it yields the ''absolute or fee simple title'' to within ''fifty feet on each side of the center of the main track'' to meet the rights acquired under State laws, Sec. 3, Chap. 181 (37 U. S. Stats. at Large, Part 1) June 24, 1912; and the granting to a railroad company of the ultimate fee in State lands must be likewise of the same effect as to lands within the granted right of way that are ''not necessary for'' right of way or other railroad purposes. The statutory right to lease, sell or buy any lands or real estate not necessary for railroad use, certainly adds to the legal effect of granting the ultimate fee in lands covered by the right of way. When a railroad company acquires the full ownership of property the right of alienation is a legal incident; and such property is subject to the laws of the State as to sale, condemnation and adverse possession except as otherwise provided by law. See 33 Cyc. 219 *et seq.;* 2 C. J. 218, 225; Laurel County v. Howard, 189 Ky. 221, 224 S. W. Rep. 762.

Where the ''absolute or fee simple title'' is yielded by the United States the Federal law no longer preserves the granted right of way except to a width not less ''than fifty feet on each side of the center of the main track,'' &c. See page 139 of U. S. Stats., Vol. 37, Chap. 181, approved June, 1912; Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U. S. 190, 34 Sup. Ct. Rep. 101. When the *State* grants or patents the ultimate fee or the ''absolute or fee simple title'' in lands covered by a previously granted right of way, it makes no *express* reservation as to any part of the previously granted right of way as does the United States, but by implication an exception or reservation is extended to the part of the right of way ''necessary to its use'' as it

is expressly authorized to sell all *"not* necessary for its use.'' In Central Pac. R. Co. v. Droge, 171 Cal. 32, 151 Pac. Rep. 663; Oregon Short Line R. Co. v. Quigley, 10 Idaho 770, 80 Pac. Rep. 401; Union Pac. R. Co. v. Theden, 104 Kan. 289, 178 Pac. Rep. 441, and other similar state cases the decisions were upon *Federal* grants of railroad rights of way, where the United States reserved the fee in the lands and had not relinquished such title as in Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U. S. 190, 34 Sup. Ct. Rep. 101; 37 U. S. Stats. at Large, Part 1, p. 139; Northern Pac. R. Co. v. Concannon, 239 U. S. 382, 36 Sup. Ct. Rep. 156; Northern Pac. R. Co. v. City of Spokane, 45 Wash. 229; 88 Pac. Rep. 135.

A railroad right of way is private property and does not have all the attributes of a public right of way for streets and highways: Pittsburg, C. C. & St. L. Ry. Co. v. Stickley, 155 Ind. 312, 58 N. E. Rep. 192; 1 R. C. L. 737; L. R. A. 1916 B, Note 657. In Missouri and other States there are controlling statutes. 2 C. J. 226. See McLucas v. St. Joseph & G. I. R. Co., 67 Neb. 603, 93 N. W. Rep. 312; Hannibal & St. J. R. Co. v. Totman, 149 Mo. 657, 51 S. W. Rep. 412.

Where a statute grants to a railroad company a right of way 200 feet in width through State lands, and the State subsequently pursuant to a legislative grant conveys to the railroad company in fee simple absolute, the lands covered by the granted right of way, the right of alienation is a legal incident, and the laws of Florida do not prohibit the railroad company from selling such lands except such as are necessary or are occupied or used or reserved for railroad purposes; but the statute expressly authorizes the railroad company to sell any of its lands that are ''not necessary for its use.'' Lands that are subject to sale and conveyance are in general also subject to loss and acquisition

by adverse possession. Land owned by a railroad company for its right of way is not public property as is ordinary public highway, but it is private property that is subject to public service to the extent required by usage or by law. "Railroad property is private property devoted to a public use." Northern Pac. R. Co. v. State of North Dakota *ex rel.* Attorney General, 236 U. S. 585, text 595, 35 Sup. Ct. Rep. 429. An ordinary public highway being public property is not subject to taxation or to sale or adverse possession. A railroad right of way, being private property, unless otherwise provided by law, is subject to taxation and also to sale and conveyance for railroad purposes and also for other purposes to the extent that it is not needed for rendering the public service; and to the extent that a railroad right of way is subject to sale and conveyance for other than railroad purposes, it is also subject to loss and acquisition by adverse possession, since railroad property is subject to the laws of the State regulating the loss and acquisition of title to lands, as much as is the property of other parties, except in so far as the railroad right of way property is necessary for the public service being rendered by the company. The law does not require a railroad right of way to be maintained or reserved at any given width, but leaves that to the demands of the public service. The statute granting the railroad right of way 200 feet in width through State lands, does not expressly or by implication require the entire 200 feet so granted to be occupied, used or reserved for right of way purposes; but a subsequent statute expressly authorizes a railroad company to sell any of its lands that are "not necessary for its use." Seaboard Air Line Railway v. McRainey, 69 Fla. 462, 68 South. Rep. 753.

Where Congress grants a railroad right of way through the public lands of the United States, the fee simple title remains in the United States, and of course State laws as

to transfer and adverse possession cannot apply to any part of the granted right of way. See Northern Pac. R. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. Rep. 671. But where Congress subsequently grants or relinquishes to the railroad company in fee simple absolute the lands covered by the granted right of way, then the State laws as to transfer and adverse possession are applicable to the right of way lands, to the extent permitted by the Federal statute, since the United States has then no proprietary interest in the lands to which the title is relinquished and no further control except to the extent that the right of way lands are needed for interstate railroad purposes. This is made clear by the decisions of the United States Supreme Court and by Acts of Congress making portions of Federal granted rights of way subject to the laws of the State through which the railroad passes ''as though the land embraced within the lines of said right of way had been granted by the United States absolutely or in fee instead of being granted as a right of way.'' For example, An Act of Congress approved June 24, 1912, provides that ''all conveyances or agreements heretofore made, of or concerning land forming a part of the right of way and all conveyances or agreements confining the limits of the right of way (granted by Congress to certain railroad companies) or restricting the same, are hereby legalized, validated, and confirmed to the extent that the same would have been legal or valid if the land involved therein had been held by the corporation making such conveyances or agreement under absolute or fee-simple title.

''That in all instances in which title or ownership of any part of said right of way heretofore mentioned is claimed as against said corporation, or either of them, or the successors or assigns of any of them, by or through adverse possession of the character and duration prescribed by the

laws of the State in which the land is situated, such adverse possession shall have the same effect as though the land embraced within the lines of said right of way had been granted by the United States absolutely or in fee instead of being granted as a right of way. ·

"Sec. 2. That any part of the right of way heretofore mentioned which has been, under the law applicable to that subject, abandoned as a right of way is hereby granted to the owner of the land abutting thereon.

"Sec. 3. That nothing hereinbefore contained shall have the effect to diminish said right of way to a less width than fifty feet on each side of the center of the main track of the railroad as now established and maintained." 37 U. S. State at Large, Part 1, p. 139. See Union Pac. R. Co. v. Laramie Stockyards Co., 231 U. S. 190, 34 Sup. Ct. Rep. 101; Chap. 181 U. S. Stats. at Large, June 24, 1912; Northern Pac. R. Co. v. Ely, 197 U. S. 1, 25 Sup. Ct. Rep. 302; Union Pac. R. Co. v. Theden, 104 Kan. 289, 178 Pac. Rep. 441; Northern Pac. R. Co. v. Concannon, 239 U. S. 382, 36 Sup. Ct. Rep. 156.

"While in some jurisdictions the view obtains that lands held by a railroad company for a right of way are held for a public purpose and cannot be acquired by adverse possession, the weight of authority is strongly opposed to this view, it being held in most jurisdictions that, in the absence of some statute otherwise providing, title by adverse possession may be acquired to lands acquired by a railroad company for a right of way or depot." 2 C. J. pp. 225, 226, and authorities cited; 22 R. C. L. 868."

Where the State grants to a railroad company a right of way through State lands and the State *does not convey, but retains* the ultimate fee to the lands covered by the granted right of way, the *lands* are not subject to sale or adverse possession, since the State remains the owner of the fee

(See Chap. 5595, Acts of 1905, Sec. 28 Ch. 610), as in the Federal grant referred to in Northern Pac. R. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. Rep. 671, and while in such case the railroad company may transfer the *granted* right of way in sales of the railroad property to another company for railroad purposes, yet any use or non-use of such *granted* right of way by a railroad company that operates as an abandonment or forfeiture of the granted right of way, would cause an extinguishment of the right of way easement, or a reverter to the State or to its grantee of the fee simple title to the lands covered by the granted right of way, in the absence of other controlling law or facts.

Where a statute grants to a railroad company "the right of way through the State lands for two hundred feet in width," and a railroad is constructed upon such right of way, and the State subsequently by patent conveys to the railroad company the ultimate fee title to the legal subdivision of lands covered in whole or in part by the previously granted right of way, the railroad company thereby becomes the owner of the entire estate in the land (whether the right of way and the fee simple title merge or not) ; and the right of alienation is a legal incident to such ownership, subject to the laws of the State regulating conveyances by a railroad company of its property that is devoted to a public use.

Where the State has conveyed to a railroad company the fee simple title to lands without reservation, the State then has no proprietary interest in or control over such lands; but by virtue of its sovereignty the State may restrain and regulate the alienation of property owned by railroad corporations; and by statute it is provided that "every railroad and canal company shall be empowered * * * to take and hold voluntary grants of real estate and other property * * * but the real estate received by voluntary grant shall be held and used for purposes of such

grant only," and "to purchase, hold and use * *. * real estate and other property * .* * and to sell, lease or buy any lands or real estate not necessary for its use." Sec. 4354, Rev. Gen. Stats. 1920.

Where a statute grants to a railroad company "the right of way through the State for two hundred feet in width," and the railroad company constructs a railroad on the right of way, and the State subsequently by patent conveys to another party the ultimate fee title to the lands on which exists the right of way previously granted to the railroad company, the grantee by operation of law takes the title to the lands subject to the rights of the railroad company in the granted right of way over the lands. The extent of the rights of the railroad company to which the conveyance of the fee to another is impliedly subject, depends upon the law that is applicable to the facts as they may appear. If the railroad company abandons the right of way, the fee is then relieved of the encumbrance. Whether the right of alienation that is incident to ownership is restrained as to any part of the granted right of way of a railroad company, is determined by the interpretation of controlling statutes. In this State where a railroad company owns a right of way on and over lands and not a fee simple title to the lands, the right of way being in the nature of "real estate," may .be leased or sold by the railroad company when "not necessary for its use," where the ultimate fee title is held by private parties, and such lease or sale does not violate applicable law or property rights.

As the law now stands in Florida if a railroad company conveys the land on which its right of way exists, without express exceptions or reservations as to a right of way, the grantee in law takes the estate conveyed subject to the railroad company's right of way that is in use as such by the railroad company or that is reserved for railroad use by appropriate evidences upon the ground or upon the public

records that afford notice to purchasers of the land. See Seaboard Air Line Ry. Co. v. McRainey, 69 Fla. 462, 68 South Rep. 753; Van Ness v. Royal Phosphate Co., 60 Fla. 284, 53 South. Rep. 381. The statutes do not expressly or by implication reserve or preserve a right of way "two hundred feet in width" to or for any railroad company, where such company owns both the right of way and the ultimate fee title to the lands thereunder, or where another party owns the fee title to the lands and the railroad company owns a right of way over such lands. The right of alienation is an incident to ownership and the only limitation of the right of alienation imposed by the statute upon a railroad company is that it shall not sell or lease "any lands or real estate" owned by it that are "necessary for its use." The provision of the statute that "real estate received by voluntary grant shall be held and used for purposes of such grant only," forbids the holding and use of such granted real estate for other than railroad purposes as contemplated by the "voluntary grant."

The liberality of the State in making grants of lands and rights of way to railroad companies, and the provisions of the statute (Chapter 610, Laws of Florida) relative to the construction and maintenance of railroads upon granted rights of way, and the exemptions and privileges (not now in force) favorable to the railroad companies, do not affect the right of alienation that a railroad company has under the law, particularly as there are no express restrictions upon the general right of alienation, and the statute (Section 4354, Revised General Statutes) expressly authorizes any railroad company to "sell, lease or buy any lands or real estate not necessary for its use." The public have no immediate interest in a railroad right of way that is not needed for the public utility purposes.

Where the sovereign grants to a railroad company a right of way through the public lands whether the right of way

be regarded as an easement or as a limited fee subject to reverter, the ultimate fee title to the lands remains in the sovereign and the company cannot alienate the right of way without the consent of the sovereign. St. Joseph & Denver City R. Co. v. Baldwin, 103 U. S. 426; Chapter 5595, Laws of Florida, 1905. If the sovereign subsequently grants or conveys to another party the ultimate fee title to the lands on which the right of way exists, such subsequent grant or conveyance is subject to the rights of the railroad company in the granted right of way. Northern Pac. R. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. Rep. 671; Great Northern R. Co. v. Steinke, 261 U. S. 119, 43 Sup. Ct. Rep. 316; Stalker v. Oregon Short Line R. Co., 225 U. S. 142, 32 Sup. Ct. Rep. 636; Stuart v. Union Pac. R. Co., 227 U. S. 342, 33 Sup. Ct. Rep. 338. See also 25 Fla. 917.

If the sovereign subsequently relinquishes the fee title to the company having the right of way, it may alienate the land except in so far as the controlling law limits the right of alienation, which limitation under the quoted Federal law covers the right of way within a stated number of feet on each side of the center of the main track of the railroad. 33 Stats. 538c, 1792; Northern Pac. R. Co. v. Ely, 197 U. S. 1, 25 Sup. Ct. Rep. 302; Part 1, 37 U. S. Stats. at Large, p. 138, Chap. 181; Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U. S. 190, 34 Sup. Ct. Rep. 101.

Under the Florida law the restriction upon the right of alienation of a railroad company is confined to lands and real estate that is "necessary for the construction and maintenance of its road," or "not necessary for its use." Sec. 4354, Rev. Gen. Stats. 1920, 69 Fla. 462.

Where a railroad company owns and conveys the land on which its right of way exists, the grantee takes subject to the right of way. Seaboard Air Line Ry. v. McRainey, 69 Fla. 462, 68 South. Rep. 753.

The opinion of the court is applicable to cases where the sovereign (State or Federal) has granted to a railroad company a right of way through the public domain, the ultimate fee title to the land remaining in the sovereign. See Chapter 5595, Laws of Florida, 1905. See also Northern Pac. R. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. Rep. 671, and other similar cases for Federal decisions on a Federal grant of right of way; and see Central Pac. R. Co. v. Droge, 171 Cal. 32, 151 Pac. Rep. 663; Oregon Short Line R. Co. v. Quigley, 10 Idaho 770, 80 Pac. Rep. 401, for instances of State decisions on such Federal grants. But the rule announced by the court does not apply where an Act of Congress permits the sale and adverse possession of portions of a federal granted right of way within stated limits "the same as would have been legal or valid if the land had been held under absolute or fee simple title." Chapter 1782, 33 U. S. Stats. at Large, p. 538, Act of April 28, 1904; Chap. 181, 37 U. S. Stats. at Large, Part 1, June 24, 1912; Northern Pac. R. Co. v. Ely, 197, U. S. 1, 25 Sup. Ct. Rep. 302; Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U. S. 190, 34 Sup. Ct. Rep. 101; Northern Pac. R. Co. v. Concannon, 239 U. S. 382, 36 Sup. Ct. Rep. 156; Northern Pac. R. Co. v. City of Spokane, 45 Wash. 229, 88 Pac. Rep. 135. Certainly such rules should not be applied where the State grants the right of way and subsequently conveys the legal title to the railroad company without limitation upon the right of alienation, and the statute expressly authorizes the railroad company to sell any land or real estate not necessary for its use. Seaboard Air Line Ry. v. McRainey, 69 Fla. 462, 68 South. Rep. 753.

In this case the railroad company was granted a right of way through State lands and subsequently pursuant to a legislative grant, the State conveyed to the company the fee title of the right of way lands. The answer avers in

effect that the company conveyed some of the lands it held in fee simple title that are covered by the right of way, without reserving the right of way, and that the only right of way owned by the company over the lands so conveyed by the company without reservations is that area in use or indicated as reserved for railroad use, and that the *locus in quo* is not within the company's right of way. These averments certainly are pertinent to the issue of complainant's title or right to the *locus in quo*, since under the laws of Florida any lands owned by the company in fee simple that are "not necessary for its use" for the public service being rendered, may be sold and conveyed by the company. There was no error in denying the motion to strike the averments last above referred to, even though there be error in denying the motion to strike other designated portions of the answer.