CLYDE H. SIMPSON, as Tax Collector of Duval County, Florida, et al., v. BARNEY HIRSHBERG, et ux.

30 So. (2nd) 912                          January Term, 1947
May 20, 1947                              Special Division A

*William M. Madison, Inman P. Crutchfield* for C. W. Hendley as Treasurer of the City of Jacksonville, *J. Henry Blount* for Clyde H. Simpson, as Tax Collector of Duval County and C. M. Gay, successor to J. M. Lee, as Comproller of the State of Florida, appellants.

*Howell, McCarthy, Lane & Howell,* for appellees.

HOLT, Associate Justice:

John Hubert Davalt and Gladys S. Davalt, his wife, on and prior to December 26, 1944, were the owners of and occupied as their homestead the real estate involved herein in the City of Jacksonville, Duval County, Florida, more particularly described as Lot 5, Block 4, Crabtree's Riverside Manor, according to recorded plat, also known as No. 1626 Parrish place.

In the early part of Decmber, 1944, the said Devalts received a small binder payment from one Ellen M. Gilleland and signed agreement whereby the Davalts agreed to sell the premises to the said Ellen M. Gilleland for $9,000.00, less the amount of the existing mortgage on said premises.

On December 26, 1944, the said Davalts executed, acknowledged and delivered into the hands of one Ellen M. Gilleland a form of warranty deed describing and purporting to convey said real estate, in which deed, unknown to the Devalts, the

names of the grantees were left blank; and on December 26, 1944, the said Ellen M. Gilleland paid the Davalts the balance of the purchase price, less said binder payment, and the amount of the existing mortgage. Under an agreement between the Davalts and said Ellen M. Gilleland the Davalts were given the right to continue to live in and occupy said premises, until about January 11th, 1945.

The said John Hubert Davalt and Gladys S. Davalt, his wife, continued to live in and reside upon said premises, under said agreement, until about January 15, 1945. In the meantime, the said Ellen M. Gilleland sold said property to the appellees for the sum of $9,500.00, and on January 8, 1945, without the knowledge of the appellees or the Davalts, said Ellen M. Gilleland, herself, did fill in the names of the appellees as the grantees in the deed hereinabove mentioned. Thereupon on January 8, 1945, said Ellen M. Gilleland delivered said deed to the appellees, receiving from the appellees in cash the full purchase price ($9,500.00 less the amount of the existing mortgage).

At the time of closing said transaction between said Ellen M. Gilleland and the appellees on January 8, 1945, the said Ellen M. Gilleland, in answer to the question of the appellees, stated to said appellees that the Davalts were entitled to and would make application for homestead exemption on said premises for the year 1945.

The deed of John Hubert Davalt and Gladys S. Davalt, his wife, hereinabove described bearing date December 26, 1944, with the name of the appellees inserted by the said Ellen M. Gilleland as hereinabove stated, was actually delivered to the appellees by said Ellen M. Gilleland on January 8, 1945, and on said date was filed for record and recorded in Deed Book 1067 at page 337 of the public records of Duval County, Florida. A true copy of said deed is hereto attached as a part hereof. A few days thereafter, about January 15, 1945, the said Davalts moved out and surrendered possession of said premises and immediately thereupon the appellees moved into and occupied said premises as their home.

Thereafter, and prior to April 1st, 1945, the said Gladys S. Davalt made written application to the Tax Assessor for Duval

28

County, Florida, for homestead exemption on said premises by mailing in the regular printed form of return postcard which she had received in the mail from said Tax Assessor. Subsequent to mailing in said printed form the said Gladys S. Davalt was advised by said Tax Assessor that the deed to said property, as recorded, showed that she and her husband had conveyed same on December 26th, 1944, and that inasmuch as she and her husband were not the owners of the property on January 1st, 1945, that they or either of them were not entitled to said homestead exemption. The said Gladys S. Davalt thereupon advised said Tax Assessor that she and her husband had conveyed said property to one Ellen M. Gilleland on December 26th, 1944, and that the only reason she had filed printed form making application for homestead exemption, as aforesaid, was that she had received said printed form in the mail and thought it was necessary for her to fill in said form and return it to said Tax Assessor. And thereupon the said Gladys S. Davalt did voluntarily withdraw said application for homestead exemption. The withdrawal of such application by said Gladys S. Davalt was without notice to or knowledge of the appellees.

The said Ellen M. Gilleland said that the Davalts stated to her on or about December 26, 1944, that they would make application for homestead exemption. The Davalts said that they made no statement to the said Gilleland or to anyone else they would make application for homestead exemption. The Davalts further said that they made no statement to the said Gilleland or to anyone else that they would make application for homestead exemption. The Davalts said that at all times they were dealing with the said Ellen M. Gilleland as a purchaser of said property; that at no time in said transaction did the said Gilleland represent to the Davalts that she was acting in any capacity other than as purchaser of said property in her own right and for her own use, benefit and behalf; that they sold said property to the said Ellen M. Gilleland and received payment in full for same on December 26, 1944, and that they had no knowledge that the appellees were claiming any interest in and to said property until several days after January 1, 1945, when the appellees came by to see the in-

terior of the house; that at the time of selling said property to the said Gilleland as aforesaid they, the Davalts, had pur-. chased another home at another location in the City of Jacksonville; that inasmuch as they would be unable to get possession of said new home until about the 11th of January, 1945, they obtained from the said Ellen M. Gilleland, for a consideration, the right to remain in said premises until about January 11th, 1945; that the consideration for the right to remain in said premises was that the said Davalts had paid the FHA monthly mortgage payment on said property to and including January 11th, 1945, and the said Ellen M. Gilleland agreed to give them credit for same for the period from December 26th, 1944, to January 11th, 1945, in lieu of charging them rent for said period. The appellee stated, because of representations made by the said Ellen M. Gilleland, he thought that he was dealing with the said Gilleland as a broker or agent for the Davalts.

It seems to us that the first questions to be decided from this state of facts is whether the homestead character of this property was (a) ever acquired, and (b) lost through abandonment.

Of course the City urges that no one here can qualify so as to receive tax exemption; that although the Davalts were present and occupying the premises on January 1, they held only the naked legal title, the equitable title having passed to Gilleland by virtue of the deed, with the space provided for the names of the grantees being in blank, the same bearing date December 26, 1944, therefore, when the Davalts made application, prior to April 1, for homestead exemption (at this time they had removed from the premises and turned them over to appellees, whose names had been inserted January 8, 1945, as grantees in the deed described) they had no interest upon which to base their application and to qualify for homestead exemption, and neither did the appellees, who were not the owners nor in possession of the property at the first of the year. So much for the position of the City.

There is no question that under the law the deed which did not contain the names of the grantees was void. 16 Am. Jur., page 483, Section 79; 6 Thompson on Real Property, p.

318, Section 3163, and cases therein cited; also Annotations, 32 A.L.R. 737; Annotations, 75 A.L.R. 1108, and cases therein cited.

Hence Gilleland neither received the legal nor the equitable title, even though the entire purchase price had been paid and received. So at the beginning of the new year the property was owned by the Davalts and acquired its homestead character by virtue thereof, in accordance with Section 7, Article X, of the Constitution of Florida.

When the property was legally conveyed to appellees, did it lose its homestead character at that point? Did this create a hiatus so that the homestead was no longer in existence? To answer these questions we must again address ourselves to the constitution. There is nothing therein which indicates that such could be the case. Certainly the homestead character attached to the property. The mere transfer of the title, on January 8, 1945, and the removal of the Davalts from possession on January 11, 1945, did not itself divest the property of its homestead character, which it had already acquired. We do not say that such would be impossible, since the appellees may have considered other property as their home-stead or may have put the property to such uses which in itself would be contrary to the applicable provisions of the Constitution, but such is not the case here. As then Justice THOMAS (now Chief Justice) said in the case of Riverside Military Academy v. Watkins, 19 So. (2) 870-1, in discussing the status of property passing from an owner who had held it tax free (an educational institution) to the United States Government, for war purposes, as to its taxability, since it ceased to be an educational institution:

"Although it could not be said that on the first day of the tax year, 192.04 Florida Stats. 1941, and F.S.A., the property was held or used exclusively for educational purposes, it is equally true that it was then in possession of the United States to the exclusion of appellant. At some point in the metamorphosis it ceased to be appellant's and simultaneously became the Government's, although impermanently, and in either category was free from taxation."

And so in the metamorphosis here, from the Davalts to the

appellees, in either ownership it was free from taxation by reason of its homestead character, which it had retained at all times.

Much emphasis has been placed upon the fact that after the deed was filled in with the names of appellees, and after the Davalts had delivered possession, and sometime before April 1, the Davalts made application to the City for tax exemption for homestead purposes, which was later withdrawn. This act, whatever the motive, and regardless of who sponsored it, was without effect and in no wise changed the situation. It is true that all interest in the property had long since passed from the Davalts. They (Devalts) could not change the status of the property, which had already been determined. See also City of Jacksonville, et al., v. Cecil C. Bailey, 159 Fla. 11, (not yet reported).

Affirmed.

THOMAS, C.J., TERRELL and CHAPMAN, JJ., concur.