102 So.2d 622 (1958)
MIAMI GARDENS, Inc., a Florida corporation, Appellant,
v.
W. Ray CONWAY and Carolyn L. Conway, his wife, and Wilbur D. Lunsford, Appellees.
Supreme Court of Florida.
May 7, 1958.
*623 Copeland, Therrel & Baisden, Miami Beach, for appellant.
William V. Patteson, Coral Gables, for appellee.
*624 O'CONNELL, Justice
Miami Gardens, Inc., appellant here, brought an action for foreclosure of a first mortgage. The appellee Wilbur D. Lunsford answered and counterclaimed for foreclosure of a second mortgage held by him. The final decree which plaintiff seeks to have reversed held that under the facts hereinafter recited plaintiff's equitable title had merged with legal title later acquired by it, making it the fee simple owner of the subject property, refused the foreclosure of its mortgage and decreed that it was satisfied by the merger, and further held that the defendant Lunsford's mortgage was a first mortgage and decreed its foreclosure.
The principal point to be determined by us is whether under the facts of this case there was a merger of the equitable title held by plaintiff with the alleged legal title held by it.
The material facts are not conflicting.
Plaintiff, Miami Gardens, Inc., conveyed the house and lot in question to W. Ray Conway and Carolyn L. Conway, his wife, and took back from them a purchase money mortgage and note dated May 28, 1952. The mortgage was properly recorded June 6, 1952. The mortgage and note were immediately assigned by plaintiff to a banking institution as collateral security for a loan made by the institution to the plaintiff.
The Conways took possession of the property and commenced making the monthly payments on the mortgage.
On July 1, 1952, the Conways executed a second mortgage and note in favor of the defendant Lunsford, which mortgage was duly recorded. This second mortgage, by a provision typewritten in the body thereof, was specifically made subject and inferior to the first mortgage held by the plaintiff.
Subsequently the Conways defaulted in their payments on the first mortgage. On July 20, 1953, they executed a deed in blank covering the property here involved and delivered same to one Atha, an agent or employee of the plaintiff.
It is important to note here that although it was signed by the Conways and acknowledged by them before a notary public, the deed in blank was never completed by having the names of the grantors nor the grantees written therein. The deed, which was never recorded, is in the record now before us.
The Conways remained in possession of the property until moving out in September or October 1953.
On October 12, 1954, the plaintiff executed an agreement for deed in which it agreed to sell the subject property to one Felts and wife who immediately went into possession thereof and thereafter made monthly payments to plaintiff under the agreement for deed.
Six days later, on October 18, 1954, the plaintiff wrote a letter to the law firm which represented it in which it stated that:
"Mr. W.R. Conway, abandoned this house, sometime ago, and turned over a deed blank over to us. Same has never been recorded.
"We understand that there is a second mortgage on record, to other parties.
"Therefore, believe that the cleanest way to handle this now, is for us to foreclose on the mortgage. Please advise if you will take this action, or, what your recommendation would be."
On November 12, 1954, the banking institution, to whom the purchase money mortgage had been assigned by the plaintiff for collateral, reassigned the mortgage back to plaintiff. The plaintiff filed its suit to foreclose the mortgage on March 5, 1956.
The complaint named the Conways and Lunsford as defendants. As above stated Lunsford filed an answer and counterclaim. The Conways file no pleadings and a decree *625 pro confesso was entered against them. Therefore, it is unnecessary for us to discuss their rights in this cause. It is to be noted, however, that Miami Gardens did not ask for deficiency decree against the Conways and under the facts of this case it does not appear that it would be entitled to such.
The cause was referred to a special master who, after taking testimony and receiving evidence, filed his report in which, in essence, he found and recommended that:
1. The equities in the cause were with defendant Lunsford;
2. The plaintiff, having accepted the deed in blank executed by the Conways and having thereafter contracted to sell the lands to Felts, was estopped to deny it was the owner of the legal title of the lands in question, and that although Lunsford's pleadings were not sufficient to raise the defense of estoppel he should be allowed to amend them to properly raise it;
3. There had been a merger of plaintiff's equitable title, i.e. the first mortgage, with the legal title it acquired "* * * by virtue of the said blank deed and by virtue of the action of the plaintiff taken under said blank deed * * *" and that because of the merger the first mortgage was satisfied and extinguished and the Conways released from liability thereunder; and
4. The mortgage held by Lunsford therefore became a valid first mortgage lien and should be foreclosed.
Lunsford filed his amended answer as recommended by the master and exceptions were taken to the master's report by the plaintiff. They were overruled by the chancellor and the final decree was entered in accordance with the special master's report.
The master concluded that the acceptance of the blank deed and release of the Conways from the liability of the mortgage note by Atha, the agent of plaintiff, the taking possession of the property and subsequent sale by agreement for deed to a third party, Felts, and the acceptance of the monthly payments from Felts estopped the plaintiff from (1) denying that it was the owner of the legal title by virtue of the blank deed and (2) denying that it had released the Conways and the property from liability under the first mortgage and note.
It seems clear that the master found it necessary to consider the doctrine of estoppel in this case because of the principle of law which holds that a deed in which the name of the grantee has not been inserted is inoperative as a conveyance so long as the blank remains unfilled. Simpson v. Hirshberg, 1947, 159 Fla. 25, 30 So.2d 912; Annotation, 1947, 175 A.L.R. 1294. This principle of law applies to this case and we therefore hold that the deed in blank from the Conways to Miami Gardens is inoperative as a conveyance of the lands in question in this suit. Having so decided it is readily apparent that the doctrine of merger does not operate here since such doctrine operates only when "* * * a greater estate and a less coincide, and meet in one and the same person, in one and the same right, without any intermediate estate." Jackson v. Relf, 1890, 26 Fla. 465, 8 So. 184, 185. Since the deed in blank conveyed no title to Miami Gardens, it is the owner only of the equitable title under its mortgage. It is not the owner of any greater estate with which its equitable estate could be merged. There being no merger, there could be no satisfaction of the first mortgage so as to elevate the second mortgage of Lunsford to the position of first mortgage.
As to the question of estoppel, the facts of this case might well support a finding that the plaintiff is estopped to hold the Conways personally liable under the mortgage note, but they do not support a conclusion that the plaintiff is estopped to contend that its mortgage is enforceable against the land in question as a superior lien to that of the defendant Lunsford.
*626 One of the essential elements of equitable estoppel is that the person who claims the benefit of the doctrine has been infiuenced or has relied upon the conduct, act or omission to act of the opposing party. Jarrard v. Associates Discount Corporation, Fla. 1957, 99 So.2d 272. This element is completely absent in the case now before us. The acts of the plaintiff which are set forth as the basis for the estoppel of plaintiff occurred long after the defendant Lunsford accepted the mortgage from the Conways, and it is neither alleged nor shown by the proof that the defendant Lunsford relied upon or was injured by any act, conduct or omission of the plaintiff. See Robertson v. Robertson, Fla. 1952, 61 So.2d 499.
"The doctrine of estoppel was invented and engrafted upon the common law to prevent wrongs and not to promote them * * * it is interposed to prevent injustice and guard against fraud." Griffin v. Bolen, 1942, 149 Fla. 377, 5 So.2d 690, 693. There is no injustice or wrong permitted or allowed by the defendant Lunsford's mortgage remaining as a second mortgage for he knew that to be his position when he acquired it. Yet on the other hand if the doctrine was so applied as to place Lunsford in the position of first mortgagee it would, in our opinion, be an injustice to the plaintiff.
For the reasons above expressed, we hold the doctrine of merger to be inapplicable in this cause and hold the doctrine of equitable estoppel to be inapplicable to the facts of this case, insofar as they concern the defendant Lunsford.
There being no merger and the doctrine of estoppel not being applicable the first mortgage held by Miami Gardens retains its status as a valid and enforceable first mortgage lien on the subject property, and the holder thereof is entitled to have same foreclosed. From the record it also appears that the second mortgage held by Lunsford is a valid and enforceable second mortgage lien and he is entitled to its foreclosure.
We are aware of the fact that the point on which we have decided this case, i.e. the effect of the deed in blank, was not directly presented to this Court on appeal. Nevertheless, it is fundamental to a decision in this case and we are required to dispose of it.
If it be any comfort to defendant-appellee Lunsford, we have also considered the disposition which should be made of this cause, assuming the deed in blank to vest title in Miami Gardens, and we would reach the same result as here, with the exception that in such case there would be no duty on Miami Gardens to account for rents and profits. This statement is obiter dicta.
Because of the manner in which we have decided this cause, and because it will be necessary for further proceedings to be had herein in the court below, we feel it wise to discuss another point which of necessity will be involved in such further proceedings.
Although the record does not show that Miami Gardens has itself been in possession of the mortgaged premises, it does show that the Felts, since October 1954, have had possession thereof under the agreement for deed executed by Miami Gardens to them. It follows that the possession of the Felts is, under these circumstances, possession by Miami Gardens. Because of the invalidity of the blank deed, such possession must be construed to be under the first mortgage and therefore Miami Gardens is a mortgagee in possession.
The authorities hold that if a mortgagee comes into possession of mortgaged premises under a title derived from the mortgagor, or from some other source, and not in recognition of or under his rights under the mortgage, he is not required *627 to account for nor is he chargeable with the rents and profits received from the mortgaged premises in his possession. 2 Glenn on Mortgages, § 204, p. 1030 (1943); Annotation, 1926, 46 A.L.R. 138, 144; 36 Am.Jur., Mortgages, § 303.
But the rule is otherwise when the mortgagee is in possession in recognition of the mortgage. In such cases, the mortgagee in possession is generally regarded as a constructive trustee who is responsible to account to the mortgagor, and those claiming under him, and he can be required to apply the proceeds of his possession to the mortgage indebtednesses on the premises in order of their priority. 59 C.J.S. Mortgages § 305. He must apply all the rents and net profits received by him to the discharge of the mortgage debt. 36 Am.Jur., Mortgages, § 301.
A mortgagee in possession is, in equity, accountable for the rents and profits received from the premises and is bound to apply them in reduction of the mortgage debt, first to interest then to principal. "The mortgagee is not allowed to make a profit out of his possession of the estate." 2 Jones on Mortgages, § 1425 (8th Ed. 1928). This is so because ordinarily the mortgagee has no right to possession.
This Court has recognized these general propositions. In Joyner v. Bernard, 1943, 153 Fla. 372, 14 So.2d 724, 726 it is stated:
"It is settled that a mortgagee in possession of mortgaged premises is required to account for the rents and profits and is bound to apply them in reduction of the mortgage debt. The mortgagee is not permitted to make a profit out of his possession of the estate. This liability arises of course only when the mortgagee's possession is in recognition of the mortgage. The burden is on the mortgagee to prove the amount of the rents and profits. See Jones on Mortgages, Vol. 2, 8th Ed., 911, 912, par. 1425; Fegers v. Pompano Farms, 104 Fla. 123, 139 So. 201; 1 C.J.S. Accounting, § 41, pages 683, 684; 19 R.C.L. 334-5, par. 108; 36 Am.Jur. 840, 841, par. 301; Williams v. Marmor, 321 Ill. 283, 151 N.E. 880, 46 A.L.R. 132, and annotations beginning on page 138."
Further, it is generally held that a mortgagee in possession is obligated to account for rents and profits not only to the mortgagor but also to a subsequent or junior encumbrancer having the right to redeem. 36 Am.Jur., Mortgages, § 302; 2 Glenn on Mortgages, § 209.1 (1943). This obligation to account in favor of junior encumbrancers rests not on any duty of the senior to the junior mortgagee, but rather on the fact that the senior mortgagee is obligated to account to the mortgagor and in equity the junior mortgagee has the right to stand in the shoes of the mortgagor. Gaskell v. Viquesney, 1890, 122 Ind. 244, 23 N.E. 791; Anglo-Californian Bank v. Field, 1908, 154 Cal. 513, 98 P. 267, and Kurz v. Pappas, 1934, 116 Fla. 324, 156 So. 737, 740.
From the foregoing it is clear that on foreclosure of the mortgages involved herein Miami Gardens must account to Lunsford for the net rents and profits which it has received during the time it has been in actual or constructive possession of said premises, such sums to be applied first to interest and the remainder, if any, to principal due under the first mortgage. As we stated in Joyner v. Bernard, supra, the mortgagee, in this case Miami Gardens, has the burden to prove the amount of the net rents and profits.
In a case such as now before us, in which the premises were sold under agreement for deed and possession delivered thereunder, we think the words "net rents and profits" as used by the authorities should be construed to mean the reasonable rental value of the premises *628 during the time of the possession thereof by the mortgagee, less the cost of maintenance, taxes, and other proper charges or disbursements. To this extent the second mortgagee, having the right to redeem, is entitled to have the debt due on the first mortgage reduced.
Accordingly the cause is reversed with direction that further proceedings be had consistent with this opinion.
TERRELL, C.J., and HOBSON, DREW and THORNAL, JJ., concur.