ALLEN, Chief Judge.
Two separate appeals were taken from the foreclosure decree by separate defendants below. One appeal was by Thurman A. Whiteside, Trustee, and individually, and P. L. Watson, individually. The other appeal was by A. V. Abbott. The two cases were consolidated in this court. A cross-assignment was filed by the appellee Sherman in the Whiteside case, No. 1634.
*801 The appellee, Hilda Patrick Sherman, as plaintiff-mortgagee in the lower court, filed an amended complaint to foreclose her mortgage on a 99-year leasehold interest in the Dania Beach Hotel, against White-side, as trustee. The complaint alleged that in 19S0 a mortgage and note was executed by James T. Clark and his wife to Simco & Company in the sum of $33,635.76; that the mortgage encumbered the fee title to the property and improvements and furnishings in the hotel. The complaint then alleged that Simco assigned the mortgage to Hilda M. Patrick and thereafter, in the same year, James Clark and his wife and Hilda M. Patrick executed a modification agreement, and at the same time James Clark and his wife executed the new note of $33,635.76. On December 31, 1951, a corrective instrument was executed by Hilda M. Patrick and Clark and his wife.
The complaint further alleges that on June 1, 1953, Clark and his wife assigned a 99-year lease that they held on the property to Whiteside, as trustee; that on November 24, 1953, Morris Eisenberg and his wife executed a warranty deed to the property to Whiteside, as trustee, subject to the mortgage on the fee held by plaintiff; that on April 6, 1954, the plaintiff, Hilda Patrick, married Robert Sherman, and on December 20, 1954, Hilda Patrick Sherman was declared a free dealer. The complaint then alleges that Whiteside failed to make the $250 payments due on the mortgage on September 1, 1957, and on October 1, 1957, and therefore the plaintiff claimed the full amount due and payable and sought foreclosure of the mortgage. At this point the-complaint was amended so as to claim that plaintiff’s mortgage was secured only by the 99-year lease and not by the fee also.
Whiteside filed an answer denying all allegations of the complaint and raised the following affirmative defense:
1.That he purchased the tenant’s rights (the Clark’s) under the 99-year lease on June 3, 1953;
2. That he purchased the fee-simple estate from the Eisenbergs on November 24, 1953; and
3. That by purchasing the fee and the leasehold the two estates merged in him, and by reason of the merger, the 99-year lease ceased to exist and that plaintiff’s mortgage therefore became unsecured and that plaintiff’s only action was at law on the note against the original makers, the Clarks.
Whiteside then counterclaimed to recover from the plaintiff all of the money which he had paid to her under her mortgage, secured by the 99-year lease, from the time he acquired the lease up to the time of suit. He alleged that all 51 monthly payments of $250 each were made by mistake and he asked for a refund with interest.
The counterclaim further alleged that if the court found that the merger did not take place and if the court found that the plaintiff was entitled to foreclosure on the 99-year lease, then Whiteside claimed the monies paid by him to plaintiff on her mortgage, plus the sums which he should have paid himself as landlord from June, 1953, to November, 1957, plus the sums which he, as tenant, had paid to Connecticut Mutual Life Insurance Company on the first mortgage (the tenant was required under the 99-year lease to make payments on the mortgage on the fee) should be declared a lien against the 99-year lease of greater dignity than the plaintiff’s mortgage lien and also prayed that this lien for all of these sums be foreclosed.
The next procedural development was that both the plaintiff and Whiteside moved for a summary decree. The court entered a partial summary decree of foreclosure on May 12, 1958, holding that the plaintiff’s mortgage constituted a lien on the leasehold estate and adjudicated that there was due and owing to the plaintiff the sum of $25, 988.67 and that this sum would be satisfied out of the sale of the leasehold which would be ordered by a subsequent decree. The court also found Whiteside’s defense as to merger to be without merit and stated *802 that the cause would proceed on the counterclaim. No appeal was taken from this partial summary decree.
On December 19, 1958, Whiteside assigned his interest in the counterclaim for rent as trustee for A. V. Abbott, the equitable owner of the fee, to A. V. Abbott. Then on December 22, 1958, A. V. Abbott filed her amended counterclaim by virtue of the above assignment in which she sought a judgment against Whiteside and P. L. Watson (Watson apparently owned some interest in the lease along with Whiteside) for the rent payments due the fee owner under the lease and asked that a lien for these rent payments be declared superior to the mortgage held by plaintiff on the leasehold estate.
' The plaintiff answered this counterclaim, pleading no knowledge of the allegations therein and asked that it be dismissed. The counter-defendant, White-side, answered admitting the assignment but stated that the status of the counterclaim for a superior lien would have to be determined by the court.
On July 15, 1959, the court entered an order denying plaintiff’s motion to dismiss the counterclaim but stated that any defenses that plaintiff had against White-side would be equally applicable against A. V. Abbott.
On August 9, 1959, Abbott moved for summary judgment on the counterclaim.
On September 11, 1959, the court entered an order on all pending motions. Abbott was ordered to appear on October 9, 1959, with all necessary documents and writings for the purpose of having her deposition taken; Whiteside was similarly ordered to appear on the same date; Watson was also ordered to appear; and final hearing was set for October 15, 1959.
The plaintiff moved to amend her answer to the amended counterclaim so as to set up the defenses of equitable estoppel and laches on the ground that Whiteside had never informed her that he had purchased the leasehold estate. The court denied this motion on October 17, 1959, but stated that if the evidence at final hearing warrants it, the plaintiff would be permitted to orally amend to set up these defenses.
The cause came on for final hearing on October 15 and 16, 1959, at which time the following facts were adduced:
The plaintiff testified that she did not know nor had she ever talked with A. V. Abbott; that she did not know Watson nor had she ever talked with him; that she had discussed with Whiteside the monthly payments; and that she had never been informed that the lease had been assigned or that any payments should have been made to Abbott.
Abbott testified that she had not met Whiteside until this litigation commenced; and that her only contact with the property was through her business manager, P. L. Watson, who had managed her affairs for 25 years.
In regard to no one informing the plaintiff, who was holding the mortgage on the 99-year lease, concerning the change in ownership of the lease and the fee, the court allowed, over objection of Abbott’s attorney, plaintiff’s attorney to set up es-toppel or laches against the claim of rent by Abbott. The plaintiff then testified that had she known that the rent was in arrears, she would have seen an attorney to take care of the matter.
The court entered a final decree on November 2, 1959, ratifying and confirming the prior partial summary decree, finding . that Abbott’s claim for rent be subordinated to plaintiff’s chattel mortgage on the leasehold; that installments due on plaintiff’s mortgage from September 1, 1957, to date total $25,988.67 plus interest of $2,296.68 making a total of $28,285.53 due plaintiff, plus $30.50 abstract fee plus $4,000 attorney’s fees plus all other costs of the suit. In regard to Abbott’s counterclaim for rent, the court found that:
*803 1. Whiteside purchased the fee “as trustee” for Abbott on November 24, 1954.
2. Whiteside had previously purchased the lease “as trustee” on June 1, 1953.
3. That there was no recorded declaration of trust showing how or by virtue of what authority Whiteside had purchased the lease “as trustee.”
4. That none of the parties had informed the plaintiff that the rent was not being paid.
5. That under section 689.07, Florida Statutes, F.S.A., since Whiteside was holding both estates “as trustee * * * it would appear that no unpaid rental was accumulating.”
6. That Abbott is therefore estopped from claiming that the delinquent rent under a landlord’s lien is superior to plaintiff’s mortgage lien.
7. That Abbott be granted a money judgment of $30,263.10 against Whiteside and Watson for the back rent plus interest.
The decree concluded by holding that plaintiff’s mortgage lien is superior to all other liens.
The record in this case is very voluminous. The testimony in the lower court was rather confusing, which did not help the lower court nor this court on appeal.
We further comment that the firm of attorneys representing the appellee, Sherman, came into the case after other attorneys had preceded them. We also note that the attorneys representing the appellant, Abbott, did not represent her in the lower court.
Appellants Whiteside and Watson contend that a purchase by Whiteside, as trustee, of both the 99-year leasehold and the purchase of the fee merged these two estates and, in effect, wiped out the mortgage of the leasehold held by the appellee Sherman.
We hold that the lower court was correct in ruling against this contention on the part of the appellant, Thurman A. White-side, as trustee. The record in this case shows that Whiteside acquired the fee as trustee for A. V. Abbott and he acquired the 99-year leasehold for himself and P. L. Watson.
19 Am.Jur., Estates, Section 135, page 588, states:
“Under the common-law definition, which is generally accepted under the modern law, merger is the absorption of one estate in another, where a greater estate and a less coincide and meet in one and the same person without any intermediate estate, whereby the less is immediately merged or absorbed in the greater. To constitute a merger, it is necessary that the two estates be in one and the same person, at one and the same time, and in one and the same right. The component elements of the general definition have met with judicial approval. Thus, it has been emphasized that in order to effect a merger of estates, there must not be an intermediate estate. * * * Moreover, there can be no merger of two estates if a person holds one of the estates for himself and the other for another person.”
See also 3 Thompson on Real Property, Supplement Section 1387, page 92; Miami Gardens, Inc. v. Conway, Fla.1958, 102 So. 2d 622; and Seaboard Air Line Ry. Co. v. Board of Bond Trustees, 91 Fla. 612, 108 So. 689, 46 A.L.R. 870.
The appellants in both appeals contend that the lower court erred in its decree of foreclosure for the appellee as the said decree failed to give a lien and judgment to the appellee upon which a proper sale could be held.
The record in this case discloses that a partial summary decree was entered on May 12, 1958, which was ratified and confirmed by the Circuit Court in its final de *804 cree of November 2, 1959, in which the 99-year lease was ordered sold unless the defendant paid the sums of money ordered in said decree. The property was described in the final decree of the court. In its decree, the the court referred to the fact that the lien of the plaintiff upon the mortgaged property was prior, superior, and paramount to all other liens, etc., of all parties to the suit.
The partial summary decree of foreclosure referred to in the final decree was entered on May 12, 1958, and filed for record May, 14, 1958. This summary judgment held that the mortgage involved in this case was a lien on the leasehold interest on the property which is described therein and that the plaintiff was entitled to a sale to satisify the sum due, said sale to be designated by the court by subsequent order.
We hold that a final order was entered by the court declaring a lien and judgment for the appellee.
It was also contended by the appellants that the lower court erred in entering a final decree of foreclosure when the plaintiff failed to produce the original promissory note or to make a satisfactory explanation of failure so to do.
The original record shows that a partial summary decree of foreclosure was entered by the trial judge on the 12th of May, 1958, at which time he held there was no general issue as to the decree of foreclosure made by the amended complaint and the answer thereto. The court held in paragraph 4 that the plaintiff produced to the court the assignment of the mortgage, the original note dated December 10, 1951, the mortgage, the modification of the mortgage, the correction and modification of the mortgage, being marked plaintiff’s Exhibits 1 through 5.
Attached as an exhibit was an assignment by Simco Operating Company to Hilda M. Patrick of a mortgage made by Joseph F. Clark and Angela Clark, his wife, on the 13th of November, 1950.
There was also filed in evidence at this hearing a note in the amount of $33,635.76 dated the 10th of December, 1951, signed by Joseph F. Clark and Angela Clark and made payable to Hilda M. Patrick. Also filed was the original mortgage deed executed the 13th day of November, 1950, by Joseph F. Clark and Angela Clark to Simco Operating Company, and a copy of the original note in the sum of $33,635.76 made by Joseph F. Clark and wife, Angela Clark, dated November 13, 1950, and payable to Simco Operating Company. It will be observed that none of these parties are parties to this action.
There was also filed in evidence a modification of this mortgage made the 10th day of December, 1951, by Joseph F. Clark and Angela Clark, the mortgagors, and Hilda M. Patrick, called the mortgagee. This modification stated that on November 13, 1950, the mortgagors gave to Simco Operating Company a mortgage to secure the payment of a promissory note in the principal sum of $33,635.76, which said mortgage was thereafter assigned by Simco Operating Company to Hilda M. Patrick; that the parties agreed to modify said mortgage and the promissory note in the following manner:
“(a) It is agreed that the principal indebtedness secured by this mortgage is still $33,635.76 and past due interest payments are hereby waived and interest shall henceforth commence running on January 1, 1952.
“(b) Said principal indebtness of $33,635.76 is evidenced by a new promissory note of which the following in words and figures is a true copy, which sum of money and promissory note the mortgagors * * * agree to pay to the mortgagee * * *. ”
Attached to this modification is a copy of the new note made by the Clarks to Hilda M. Patrick for $33,635.76 on the 10th of December, 1951.
*805 The record does not show any objections or questions raised to the exhibits filed as aforesaid upon which the chancellor predicated his partial summary final decree of foreclosure even if it is represented that the original note made by the Clarks to Simco Operating Company should have been filed in evidence in this case, which we hold, under the facts of this case, was not necessary. We would further hold that any objection made should have been made at the time of the partial summary final decree when the exhibits were filed instead of waiting and raising the question at the time the court approved in his final decree his partial summary judgment that has heretofore been entered.
We think the record in the case sufficiently identifies the new note that was foreclosed and given in lieu of the first note and superseded the first note. We are of the opinion that the lower court committed no error with reference to the failure to produce the so-called first note.
The appellee, by cross-assignments, contends that the lower court erred in denying the plaintiff’s motion to require the defendant, Thurman A. Whiteside, as trustee, to deliver the alcoholic beverage license belonging to and being a part of the mortgaged premises.
It is the contention of the appellee that the liquor license was included by the broad description in the mortgage. It is also alleged in the appellee’s argument under the cross-assignments that Whiteside caused the Dania Beach Hotel liquor license to be sold for $15,000.
We do not construe the mortgage as including the liquor license. The appellant Whiteside in his reply brief quotes from 2 Fla.Jur., Alcoholic Beverages, § 13, page 59, as follows:
“ ‘In general, a license is a permit or authorization to do what, without a license, would not be lawful. The acquiring of a license to sell intoxicating liquor is a matter of privilege and not a matter of right, that is, there is no vested right to engage in the business of selling intoxicating beverages. Such a license is at the most a personal or temporary permit or privilege granted pursuant to law under restricted terms, conditions, and regulations, to be enjoyed so long as its conditions and restrictions are complied with, authorizing that to be done which could not be done without the license.’ Bateman v. [City of] Winter Park (1948) 160 Fla. 906, 37 So.2d 362; Turner v. [City of] Miami (1948) 160 Fla. 317, 34 So.2d 551; and State ex rel. First Presbyterian.] Church [of Miami] v. Fuller (1938) 136 Fla. 788, 187 So. 148.”
We find no error in the lower court’s ruling denying the motion of the plaintiff-appellee to require the defendant White-side, as trustee, to deliver the alcoholic beverage license to the appellee.
The appellant contends that there was no basis for the chancellor’s finding that A. V. Abbott is estopped from claiming that the unpaid rentals create a lien superior to the plaintiff’s mortgage lien. It is noted that Whiteside purchased the lease “as trustee” for himself and P. L. Watson, Abbott’s business manager, on June 1, 1953, and purchased the fee as trustee for Abbott on November 24, 1954. Pursuant to the terms of the lease Whiteside paid the mortgage payments to the plaintiff from the time he acquired the lease up to the time of suit. He did not, however, pay any rental payments to himself as landlord from June, 1953, to November, 1957. The fact that the rent was not being paid was never communicated to the plaintiff-mortgagee. It is significant to note that Abbott, the beneficial owner of the fee during this period, did not attempt to terminate the lease even though her business manager, Watson, and her trustee, Whiteside, were the parties primarily liable for this rent.
The court below observed that Abbott, through her agent, created a situation where *806 the title to the fee and title to the lease were both in Whiteside, as trustee, thus making St appear to the holder of the mortgage on the lease that no rent was being accumulated since the possession and ownership of the property were in the same entity. Having participated through her agent in creating this situation, plus failing to make any claim for rent from the date of acquisition ■of the fee until the claim was first asserted during the progress of this suit, a period of approximately 51 months, the lower •court found that Mrs. Abbott could not .equitably be permitted to claim a priority •of her lien for rent over the lien of the mortgage which was secured by the lease. T.R. 144-146.
Article XII of the lease provides in part:
“ * * * in case at any time default shall be made by the Lessees in the payment of any of the rent herein provided for upon the day the same becomes due and payable * * * it shall and may be lawful for the Lessors, at their election, to declare said demised term ended and to reenter upon said premises * * * either with or without process of law. * * *”
Paragraph B of Article XII of the lease provides:
“Though this be a long term lease, the parties understand and agree that the relationship between them is that of landlord and tenant, and the Lessees specifically acknowledged that all statutory proceedings in the State of Florida, regulating the relationship of landlord and tenant and the remedies accruing to the landlord upon default of the tenant, respecting, collecting of rent or repossession of the premises, accrue to the landlord hereunder.”
Paragraph C of Article XII provides in part:
“There shall be no forfeiture of the term because of any default on the part of the Lessees, unless the Lessees shall fail to cure such default within thirty (30) days after written notice by the Lessors so to do. If at the expiration of such thirty-day period after such notice, such default, which was the basis of such notice, shall continue to exist, the Lessors may give to the Lessees written notice of intention to end the term of this lease, specifying a day not less than five days thereafter, whereon the term shall end and then, upon the day so specified in said second notice, the term of this lease shall expire as fully and completely as if that day were the date herein definitely fixed for the expiration of the term * * »
Article XVII states that “When either party desires to give notice to the other in connection with or according to the terms of this lease, such notice shall be given by registered mail and it shall be deemed given when deposited in the United States mails. * * * ”
There is no showing in the record that the above procedure was complied with in terminating the lease. The first mention of any non-payment of rent was when Abbott filed her complaint for cancellation of the lease and claim for rent and other relief on December 15, 1958. At this stage of the proceedings the court had already entered the partial summary decree establishing a lien on the 99-year leasehold interest in favor of the mortgagee-Sherman and the court had also held that there had been no merger of the lease into the fee title. On December 22, 1958, after having been assigned Whiteside’s interest in the claim for unpaid rental, Abbott filed her amended counterclaim for the unpaid rental but still there was no showing that the lease had ever been properly terminated by the lessor as required in the above quoted provisions of the lease,
•A. V. Abbott in her reply brief claims that the court overlooked the pleading of the appellant Abbott which was styled as amended counter-claim and was the basis *807 for the hearing held on October IS and 16, 1959, in which Abbott not only prayed for the priority of her lien for rent but also asked for cancellation of the 99-year lease for breach of its covenants by the lessees. There was not any direct ruling from the court on the prayer for cancellation of. the breach of the 99-year lease, but we think the lower court necessarily denied such relief in not affirmatively granting it. There is no evidence in the record to show that the appellant Abbott complied with any of the conditions precedent set forth in the lease in order to cancel it.
Finding no reversible error, we affirm the lower court.
Affirmed.
KANNER, J., and CARLTON, VASSAR B., Associate Judge, concur.