Randy Miller Executive Director Department of Revenue Tallahassee
QUESTIONS:
1. Prior to the July 1, 1978, effective date of s. 3 of ch. 78-269, Laws of Florida, were fuels used in the production of electricity subject to assessment at 1 percent of just value as `goods in the process of manufacture' as set forth in s. 193.511, F. S. 1977?
2. If your answer to question 1 is in the negative, are the provisions of s. 3 of ch. 78-269, Laws of Florida, sufficient authority to reimburse local governments for revenues lost during the tax year 1978 due to 1-percent assessment of fuels used in the production of electricity in view of the language of s. 4 of ch. 77-476, Laws of Florida, making the funds available for payment of revenues lost `as a result of . . . the reduction of inventory assessments as provided in s. 193.511, as amended by this act'?
3. If question 2 is answered in the affirmative and a property appraiser was assessing `fuels used in the production of electricity' as materials and supplies at 100 percent of full just value, would the local governing bodies be entitled to reimbursement from the local government exemption trust fund for revenue loss from reduction of assessment from 100 percent to an assessment of 1 percent?
SUMMARY:
Prior to July 1, 1978, fuels used in the production of electricity were not subject to assessment at 1 percent of just value; s. 3 of ch. 78-126, Laws of Florida, which provided that fuels used in the production of electricity be considered goods in the process of manufacture, was not operative until the tax day or day of assessment, January 1, 1979, following the effective date of ch. 78-269.
Your first and second questions are answered in the negative; accordingly, your third question is not addressed here.
AS TO QUESTION 1:
A well-recognized rule of statutory construction is that a statute will be given prospective application unless the Legislature clearly intended that it be construed retroactively. State ex rel. Riverside Bank v. Green, 101 So.2d 805 (Fla. 1958), and 2Sutherland Statutory Construction, s. 41.04 (C. Sands 4th rev. ed. 1972.) Another rule of statutory construction states that an enactment of an amendment by the Legislature creates a presumption of change from the original act. That is, the fact that the amendment was enacted indicates that the Legislature intended to change the original act and change legal rights. Carlile v. Game and Fresh Water Fish Commission, 354 So.2d 362 (Fla. 1977). Stateex rel. Triay v. Burr, 84 So.2d 61 (Fla. 1920), and 1ASutherland, s. 22.30.
In 1977, the Legislature enacted ch. 77-476, Laws of Florida. Section 193.511, F. S., was amended to read:
 193.511 Assessment of inventory. — All items of inventory shall be assessed for the purpose of taxation at 10 percent of just valuation, except that goods in the process of manufacture and raw materials held for physical incorporation into the goods to be sold shall be assessed for the purpose of taxation at 1 percent of just valuation.
This amendment changed existing law by lowering the assessment of all items of inventory from 25 to 10 percent of just valuation and created the following exception: goods in the process of manufacture and raw materials held for physical incorporation into the goods to be sold shall be assessed at 1 percent of just valuation. The effective date of the above amendment was July 1, 1977.
Chapter 77-476, Laws of Florida, also amended s. 196.032, F.S. Subsection (2) of said section, found in s. 4 of the law, reads in pertinent part as follows:
196.032 Replacement funds; trust fund; annual payments. —
 (2) Each qualified county, municipality, or special district is entitled to receive an annual payment from the fund in an amount equal to the revenue lost as a result of the additional exemptions provided in s. 196.031(3) and the reduction of inventory assessment provided in s. 193.511 as amended in this act. . . .
This amendment changed existing law by providing for payment from the Local Government Exemption Trust Fund to qualified local governments as a result of the reduction of inventory assessment provided in s. 193.511, F. S., as amended in ch. 77.476. The effective date of this amendment was July 1, 1978, 1 year after the first amendment discussed above.
In 1978 the Legislature enacted ch. 78-269, Laws of Florida. This amendment changed existing law by providing that fuels used in the production of electricity shall be considered goods in the process of manufacture. The effective date of this amendment was July 1, 1978. There is no language in ch. 78-269 which expressly or by necessary implication indicates that the Legislature intended that the law be applied retroactively. Because of the rule of construction concerning prospective application of statutes unless otherwise indicated, the fuels used in the production of electricity could not be considered goods in the process of manufacture until July 1, 1978.
In further support of answering your first question in the negative is the application of the rule of construction concerning amendments creating a presumption of change. The fact that the Legislature enacted the amendment indicates its intention to create a change in existing law. This presumption can be rebutted if there are indications that the Legislature merely intended to interpret the original law. 1A Sutherland, supra, s. 22.30. There is no such indication here. There is no express legislative intent section in ch. 78-269, Laws of Florida; the title to the act reflects nothing beyond the amendment of the statute; and the 1978 Journals of the Senate and House of Representatives reveal no intent beyond amendment of the statute.
Your letter refers to legal authority which addresses the issue of whether `goods used in the process of manufacture' include `fuels used in the production of electricity.' There is a split of authority on whether generating and distributing electricity for electric power constitute manufacturing within the meaning of tax exemption statutes. See 17 A.L.R.3d 7. And, with no definitive direction on this issue by the Legislature or the courts, the rules of construction discussed above control.
In view of the foregoing, I conclude that, prior to July 1, 1978, `fuels used in the production of electricity' were not subject to assessment at 1 percent of just value as `goods in the process of manufacture' as set forth in s. 193.511, F. S.
AS TO QUESTION 2:
Section 192.042, F. S., provides in pertinent part:
 192.042 Date of assessment. — All property shall be assessed according to its just value as follows:
 (3) Inventory, on January 1 of each year at its average value during the prior calendar year.
State ex rel. Riverside Bank v. Green, supra, was concerned with an amendment to an intangible personal property statute which increased the tax due. The effective date of the amendment in question was July 1 of that year. The Florida Supreme Court held that the amendment could only operate prospectively and that the increase in tax would not be applied until the next date of assessment following the effective date of the act. Cf. AGO 067-84, question 1; see Lake Worth Towers, Inc. v. Gerstung,262 So.2d 1 (Fla. 1972) (taxable status of real and personal property is determined as of January 1). Attorney General Opinion 071-379 addressed the question of whether a person who reaches age 65 subsequent to January 1 (the date of assessment for real property) is qualified for the additional homestead tax exemption for that year. The opinion concluded that the person would not be entitled to the exemption for that year because his status as being subject to taxation is determined as of the date of assessment, January 1, of each year. See Simpson v. Hirshberg, 30 So.2d 912 (Fla. 1947); Gautier v. Lapof, 91 So.2d 324 (Fla. 1956); and Jacksonville Expressway Authority v. Milford, 115 So.2d 778 (1 D.C.A. Fla., 1959).
In view of the foregoing, I conclude that the provisions of s. 3 of ch. 78-269, Laws of Florida, are not sufficient authority to reimburse local governments for revenues lost during the 1978 tax year due to the provisions of s. 193.511, F. S.
Prepared by: Barbara Staros Harmon, Assistant Attorney General